STEPHEN A. BODZIN AND TANYA K. BODZIN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1104-71. Filed September 4, 1973.

*John J. Yurow*, for the petitioners.
*Steven G. Goldstein* and *Robert S. Erickson*, for the respondent.

DAWSON, *Judge:* Respondent determined a deficiency in petitioners' Federal income tax for the year 1967 in the amount of $87.78. The only issue presented for our decision is whether petitioner Stephen A. Bodzin is entitled to deduct a portion of the cost of one room in his apartment as a business expense because of the use of the room as a home office. The issue is argued within the context of sections 162 and 262, I.R.C. 1954.[1]

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended.

FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Stephen A. Bodzin and Tanya K. Bodzin (the petitioners herein) are husband and wife whose legal residence was in Alexandria, Va., when they filed their petition in this proceeding. They filed their joint Federal income tax return for taxable year 1967 with the district director of internal revenue at Richmond, Va.

During the entire year 1967 Stephen A. Bodzin (hereinafter referred to individually as petitioner) was employed as an attorney-adviser in the Interpretative Division, Office of the Chief Counsel, Internal Revenue Service. The Interpretative Division prepares legal opinions for the guidance of officials and employees of the Internal Revenue Service; reviews rulings or opinions referred to the Office of Chief Counsel by the Office of the Assistant Commissioner (Technical); reviews or assists in preparing mimeographs and press releases when referred to the Chief Counsel's Office for consideration; reviews and edits revenue rulings which are to be published; reviews closing agreements; and assists in maintaining digests of the opinions of the Chief Counsel. In short, the primary function of the Interpretative Division is to be a lawyer for the Commissioner of Internal Revenue. The work of the Interpretative Division has an appreciable effect on the interpretation and administration of the Federal tax laws.

Petitioner's duties as an attorney-adviser included the following: he worked on proposed ruling letters and published rulings, requests for technical advice referred to the Office of Chief Counsel by the Assistant Commissioner (Technical), and requests from other divisions within the Office of Chief Counsel for an opinion with regard to particular tax law problems. Although petitioner had been employed for only 6 months at the beginning of 1967 and his relative inexperience was at first taken into consideration by his supervisors, he was assigned a wide variety of important and complex legal problems. When assigned a problem he would first read and review the request and administrative files and proceed to analyze the facts and issues involved. Next he would research the problem extensively, using the references available in his own office area, the Chief Counsel's library, the Interpretative Division digest section, and such other sources as were available to him. He also conferred with others, such as reviewers, officials of the Service, and taxpayers' attorneys, to obtain their views and additional information. At the conclusion of all this, the petitioner would ordinarily draft a proposed memorandum—sometimes called a General Counsel Memorandum or G.C.M.—

containing his final judgment of the problem. He might make several drafts of a G.C.M. before producing one that he was satisfied with. A proposed G.C.M. was reviewed carefully and thoroughly by his supervisors. Sometimes the petitioner would also prepare a "side memorandum" to accompany his draft of the G.C.M.

The duties of an attorney in the petitioner's position required mature judgment and an ability to apportion one's own time and workload. Petitioner generally worked independently, without day-to-day supervision, receiving guidance only when requested or when guidance was deemed necessary.

It was the policy of the Interpretative Division to complete its cases as expeditiously as possible, the quality of the work performed on each case being emphasized above all else. No specific number of cases was required to be completed at the end of a given week or month. Attorney production reports were, however, required. Each week the petitioner filled out one such report showing the number of cases disposed of in the preceding week, the number of cases on hand, and the number of 60-day cases and expedite cases on his docket. The report also listed the date on which each case was received by him, the date on which he expected to begin work on the case, the date on which he actually began work on the case, and the target date by which he expected to finish the case. Petitioner was given the responsibility of setting his own target dates. They were supposed to be realistic ones. However, he could, and often did, extend them. So-called expedite cases were to be completed within a short period of time. Though rare, petitioner did receive and work on some expedite cases.

It was not the policy of the Interpretative Division to request its attorneys to work overtime. Accordingly, petitioner was not required, requested, expected, or encouraged to work after normal working hours (9 a.m. to 5:30 p.m.).

Nevertheless, petitioner's duties and responsibilities were of such a nature that he frequently deemed it desirable to work overtime in order to meet deadlines, self-imposed or otherwise, and to insure that work was performed to the best of his abilities. In addition, petitioner liked to use evenings and weekends to read widely about current developments in the tax law. He would spend hours reading such things as advance sheets of various Federal tax services and Tax Court opinions. Petitioner was not given any additional compensation for overtime work since his salary was regarded as covering all job-connected work regardless of the number of hours devoted thereto.

During 1967 the petitioner, his wife, and one child lived in an

apartment in Alexandria, Va., across the Potomac River from Washington, D.C. The apartment consisted of a living room, dining room, kitchen, two bedrooms, two bathrooms, and a study or den. The study was a separate room, approximately 8 feet by 12 feet in size. It was furnished with a large desk, a desk chair, several bookcases, several cabinets, and several lamps. The bookshelves contained, among other things, a 1-year-old looseleaf tax service, a set of Seidman's Legislative History of the Income Tax Laws, and various tax treatises and lawbooks. There was no other furniture or appliances in the room. The room was not used when entertaining visitors and was generally not used by anyone except the petitioner. He used the room as his home office.

Petitioner occasionally used the room for purposes unrelated to his business, including payment of bills, reconciliation of monthly bank statements, and stamp collecting. He stored in the room personal papers, his stamps, and his personal library. To this was added some of his wife's personal library.

Petitioner usually worked in his home office two or three evenings during the week and for 3 to 5 hours on weekends. He worked on cases and other matters assigned to him and read about recent developments. With respect to his cases, he would rely sometimes on reference materials of his own stored in the study and sometimes on materials that he had photocopied and brought home. He frequently worked on the first draft of memoranda while at home in his home office. He would often prepare for upcoming conferences while there.

During 1967 the petitioner customarily traveled the 10 miles to and from work in a carpool that left the Federal Triangle area of downtown Washington, D.C., shortly after 5:30 p.m. Therefore, whenever petitioner found it desirable to work past the normal working hours he was faced with the following three choices: (1) Go home with the carpool and return to the Internal Revenue Service offices after dinner; (2) use public transportation or call home for a ride after working late at the Internal Revenue Service offices and eating dinner downtown, eating no dinner, or postponing dinner until arriving at home; (3) bring work home to his home office. In such situations petitioner almost invariably chose to bring the work home because it was more convenient to do so and because he thought it was more efficient. It enabled him to make better use of his carpool and to spend more time with his family.

The Internal Revenue Service offices are located at 1111 Constitution Avenue in downtown Washington, D.C. Petitioner was pro-

vided an office in that building. At all relevant times his office in the Internal Revenue building was heated and air-conditioned 7 days a week, 24 hours a day. If he had chosen to do so, the petitioner could have worked comfortably in his Internal Revenue Service office in the evenings and over weekends and holidays. The Internal Revenue building was, and is, at all times open to persons having the proper security clearance and identification. Petitioner always had both.[2]

Petitioners paid a total of $2,100 in rent for their apartment in 1967. Having determined that $100 of this amount was allocable to the use of their study as a home office, they deducted the $100 as "business expenses deductible under sec. 162"—an itemized miscellaneous deduction. Respondent disallowed the claimed deduction.

#### ULTIMATE FINDINGS

(1) Petitioner's use of his home office was appropriate and helpful to the performance of his duties as an attorney for the Internal Revenue Service.

(2) Petitioner's expenses of maintaining his home office in 1967 constituted ordinary and necessary business expenses.

#### OPINION

Petitioner contends that the claimed deduction is an ordinary and necessary business expense under section 162(a). Respondent, while in no way challenging the correctness of the amount involved, would disallow the deduction on the ground that the expense "was not required in order for the Petitioner to properly perform his employment duties." According to respondent, the petitioner must prove "that the nature of his duties required working after normal working hours and that his employer failed to provide him with an office that was adequate and reasonably accessible for the performance of such work." Respondent argues that the petitioner fails to establish his right to the claimed deduction when it appears that he "voluntarily chose to work after normal working hours and that he [petitioner] performed such work at home rather than at the office of his employer solely because of personal reasons." Alternatively, respondent argues that the expense incurred was an expense of his employer (the Internal Revenue Service) which petitioner voluntarily assumed; therefore, it cannot be deducted by petitioner.

With respect to his primary ground, respondent attempts to rehabilitate Rev. Rul. 62–180, 1962–2 C.B. 52, which laid down guide-

---

[2] The record does not disclose whether the Chief Counsel's library was open after normal working hours.

lines for determining the deductibility of home office expenses and for figuring the amount of such expenses. The ruling states that one requirement for deductibility is "that, as a condition of his employment, he [the taxpayer] * * * [must be] required to provide his own space and facilities for performance of some of his duties." Respondent has argued in the past that this means that the *employer*, if one exists, must *require* that the taxpayer provide his own facilities. *Newi* v. *Commissioner*, 432 F.2d 998 (C.A. 2, 1970), affirming a Memorandum Opinion of this Court. Compare *Harold A. Christensen*, 17 T.C. 1456 (1952), (promotion and entertainment expenses paid by a drug company field manager); *John J. Ide*, 43 B.T.A. 799 (1941), (travel and entertainment expenses paid by a Government employee); *David J. Primuth*, 54 T.C. 374 (1970), (employment agency business). This argument has been previously rejected. *Newi* v. *Commissioner, supra.*[3] Respondent now hastens to point out that, although parts of the ruling are misleading, "the examples set forth in Rev. Rul. 62–180, *supra*, make it clear that the term 'required as a condition of employment' means required in order to properly perform the employment duties." We think this approach is also unsatisfactory in that "required" can be interpreted strictly as meaning "absolutely essential" or "absolutely necessary" and such an interpretation leads to the imposition of a standard which is too strict. Therefore, we likewise reject the rehabilitated version of this ruling.

Respondent makes further use of the revenue ruling in connection with a correlative argument. He contends that "where the work was done at home only as a matter of convenience in spite of adequate office facilities, the deduction is properly disallowed." This argument is illustrated by example (4) of Rev. Rul. 62–180, *supra* at 56. The argument and the test that it seeks to establish are too broad. The test could be made to work, however, if the word "only" was emphasized, but we need not fiddle with it since a better test already exists.[4]

The applicable test for judging the deductibility of home office expenses is whether, like any other business expense, the maintenance of an office in the home is appropriate and helpful under all the circumstances. *Newi* v. *Commissioner, supra; LeRoy W. Gillis*, T.C. Memo. 1973–96. That the maintenance of the home office can be characterized as "a matter of convenience" due to the existence of duplicate employer-

---

[3] See also *Richard Keith Johnson*, T.C. Memo. 1972–192; *James L. Denison*, T.C. Memo. 1971–249; *Marvin L. Dietrich*, T.C. Memo. 1971–159; *Stanley E. Bailey*, T.C. Memo. 1971–107; *Christopher A. Rafferty*, T.C. Memo. 1971–203; *Herman E. Bischoff*, T.C. Memo. 1966–102.

[4] Rev. Rul. 62–180 has recently been found wanting with regard to its method of allocation. *George W. Gino*, 60 T.C. 304 (1973).

provided facilities does not void the conclusion that the expenditure is appropriate and helpful.[5] A finding that the home office was simply for the taxpayer's personal convenience would bar the deduction if the Court concluded that personal convenience was the primary reason for maintaining the office. Such a finding would displace any conclusion as to "appropriateness" and "helpfulness." Of course, a finding of bad faith on the part of the taxpayer, i.e., that he sought only to manufacture a deduction, would also be decisive in favor of the respondent's determination.

In this case there is no question as to the good faith of the petitioner or the reasonableness of the amount. Cf. *Commissioner* v. *Heininger*, 320 U.S. 467 (1943). We have found as an ultimate fact, on this record, that the expenses at issue were directly related and pertained to his business—that of a Government attorney. It makes no difference that the petitioner was not required to maintain a home office, that he wanted merely to do a good job, and that he liked his work. The expenses were "necessary" because they were appropriate and helpful in the conduct of his business. They enabled him to keep a facility in his home wherein he could, and did, work. See *Newi* v. *Commissioner*, *supra; Blackmer* v. *Commissioner*, 70 F.2d 255 (C.A. 2, 1934). They were "ordinary," and not capital, in nature. See *Welch* v. *Helvering*, 290 U.S. 111 (1933) ; *Commissioner* v. *Tellier*, 383 U.S. 687 (1966). Accordingly, we hold that the home office expenses of this petitioner fall within section 162 and outside section 262.[6]

With respect to respondent's alternative argument, it is our view that the home office expenses of the petitioner were not the responsibility of the Internal Revenue Service; that petitioner had no right to reimbursement for such expenses; and, consequently, he did not voluntarily assume them.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

[5] See *Freda W. Sandrich*, T.C. Memo. 1946–82, Supplemental Opinion, T.C. Memo. 1946–144, where the "story preparation" expense, really a home office expense, was incurred to some extent to serve the decedent's convenience.

Lest anyone be misled about the precedential role of the case of *Harold H. Davis*, 38 T.C. 175 (1962), wherein the home office expenses of a college professor were disallowed, we repeat what we have said once before :

"That case has a strange history. The Commissioner prevailed in this Court over vigorous dissent. On appeal to the Ninth Circuit, our decision was vacated and remanded for entry of decision in accordance with the stipulation of the parties. On remand, this Court entered a decision of no deficiency. The Commissioner apparently abandoned his position. In any event, the *Davis* case must now be considered in the light of more recent opinions. [*Marvin L. Dietrich*, T.C. Memo. 1971–159.]"

See generally Wolfman, "Professors and the 'Ordinary and Necessary' Business Expense," 112 U. Pa. L. Rev. 1089 (1964).

[6] For an indication that the Government is aware of the problems home office expenses present for the collection of revenue, see Proposals for Tax Change, Department of the Treasury (Apr. 30, 1973). Obviously these problems are best dealt with by Congress.

RAUM and TANNENWALD, *JJ.*, did not participate in the disposition of this case.

---

SCOTT, *J.*, dissenting: Even though I recognize that the authorities cited in the majority opinion, particularly the Memorandum Opinions referred to therein, support the conclusion reached, I respectfully disagree with that conclusion since in my view the use by an employed lawyer of a part of his home for doing professional reading and some written work for his employer does not change the personal expense of rental of a home to a business expense. Under the holding of the majority opinion, there would certainly be no professional person, and very few, if any, business people, who would not be entitled to deduct as a business expense some portion of the cost of rental of a home or the maintenance of a house since the great majority of such persons do professional reading and written work for themselves or their employers in their homes. In fact, this is probably true of the majority of persons interested in their work regardless of the type of work they do unless their work is purely mechanical in nature. In my view it was never the intent of section 162 to change the personal expenditure of a taxpayer for a home for himself and his family into a business expense merely because that taxpayer is sufficiently interested in the work in which he engages to do some work in his home.

DRENNEN and FEATHERSTON, *JJ.*, agree with this dissent.

---

FEATHERSTON, *J.*, dissenting: I respectfully dissent. Section 162(a) allows as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." In my opinion, the rental expenses here in issue were not paid or incurred in carrying on any business. Rather, they were paid by petitioner in providing a home for himself and his family and are nondeductible "personal, living, or family expenses" under section 262.

In my view, it is beside the point that petitioner's overtime work or his use of his home office was "appropriate and helpful to the performance of his duties as an attorney for the Internal Revenue Service." That is not the issue. The question is whether the rental expenses were paid or incurred in carrying on petitioner's business. And there is nothing to show that he would not have incurred these same rental expenses (or that his rent would have been less) if he had found it more convenient to do his overtime work at the office provided and maintained for that purpose by his employer.

Surely the Commissioner would not be heard to claim petitioner received additional taxable income if he used his Internal Revenue Service office for such personal purposes as storing his golf clubs, keeping his umbrella or raincoat available for a rainy day, eating his lunch,

taking personal telephone calls, etc. Such uses are merely incidental to the business use of the office. Similarly, petitioner's use of a room in his apartment for a few hours of overtime work each week is merely incidental to the purely personal purpose for which the rent was expended.

I am aware that language tending to support the majority appears in some prior opinions on home offices and that the Commissioner's action in this area has not always been consistent. But to say, as does the majority, that the applicable test for judging deductibility of home office expenses is whether "the maintenance of an office in the home is appropriate and helpful under all the circumstances" does not provide a practical guide. Indeed, in my opinion, that test confuses petitioner's personal convenience in doing overtime work with the purpose for which his rent was actually paid. Where it is not shown that rent was paid for the purpose of acquiring home office space—in addition to the rent otherwise required to obtain living quarters—the reasoning of *Fausner* v. *Commissioner*, 413 U.S. 838 (1973), clearly suggests that a deduction is not allowable under section 162(a).

DRENNEN, *J.*, agrees with this dissent.

———

QUEALY, *J.*, dissenting: Section 162 provides for the deduction of "the ordinary and necessary expenses" paid or incurred by a taxpayer in carrying on his trade or business. In my opinion, the deduction in question was neither "ordinary" nor "necessary." The petitioner was a salaried employee of the Internal Revenue Service. He was neither required, nor did his superiors expect him, to do any work at his place of residence.

This is not a situation in which the petitioner actually transacted any business from his residence. Taking his testimony at face value, the principal so-called business use of the petitioner's "study" was limited to reading up on current tax reports and keeping abreast of developments in his field, an avocation which might improve his skills, but where, when, and to what extent he engaged therein was solely a matter of personal choice and convenience. He could have done as much at the dining room table.

While the amount claimed as a deduction is hardly significant, I would regard it as the "nose of the camel." It is a common practice for lawyers, doctors, engineers, and other professionals who have any interest in attaining excellence in their profession, to read up on technical publications and other informative materials outside of their normal working hours. Such a practice hardly justifies claiming some part of the cost of the residence as a trade or business expense within the meaning of section 162. It is solely a matter of personal choice and

convenience, to which I would apply the same rules which have recently been affirmed by the U.S. Supreme Court with respect to a taxpayer's expenses of driving to and from his job. See *Fausner* v. *Commissioner*, 413 U.S. 838 (1973), affirming 472 F. 2d 561 (C.A. 5, 1973). In order for such an expense to constitute an allowable deduction, I would require *as a minimum* proof on the part of the taxpayer that the space claimed to have been devoted to this purpose in the residence of the taxpayer would not have been acquired except for such purpose.

DRENNEN, *J.*, agrees with this dissent.