LENA M. ANDERSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Anderson v. Commissioner
Docket No. 4740-70
United States Tax Court
T.C. Memo 1974-49; 1974 Tax Ct. Memo LEXIS 267; 33 T.C.M. (CCH) 234; T.C.M. (RIA) 74049; February 28, 1974, Filed Lena M. Anderson, pro se. Willard N. Timm, Jr., for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: Respondent determined a deficiency in petitioner's income tax for 1967 in the amount of $1,340.77. The issues for decision are whether a gain realized on a sale of stock purchased on December 2, 1966, and sold on June 2, 1967, was held for more than six months, and whether certain deductions should be allowed for home office expense, travel expenses incurred for the production of income, and real estate taxes paid in 1967. FINDINGS OF FACT At the time the petition was filed in this proceeding, *269 petitioner was a legal resident of Hacienda Heights, California. She timely filed her income tax return for 1967 with the appropriate office of the Internal Revenue Service. [1]
On December 2, 1966, petitioner purchased 100 shares of Neptune Meter Company (NPM) stock for $2,279.50. She sold this stock on June 2, 1967, for $4,751.90. She reported the gain of $2,472.40 as a long-term capital gain. In his statutory notice of deficiency dated April 27, 1970, respondent determined the gain to be short-term rather than long-term. On her 1967 return, petitioner deducted home office expenses of $500. Petitioner's income in 1967 consisted solely of dividends on stock, interest, rents of real property, and gains from stock transactions. She had no business or profession other than the management and conservation of her real property and stock investments. She was not a licensed real estate broker or salesman in 1967 and did not buy or sell any real property in the ten-year period prior to 1967 except *270 for the sale of her home in 1963 and the purchase of another home in 1964. Petitioner's home during the year in issue contained 1,850 square feet. Respondent determined that petitioner used 143 square feet, the average size of a room in her home, for business purposes. Accordingly, he allowed her a deduction of 7.7 percent of the costs, including depreciation, of maintaining her home, or $112. Petitioner's investment-related business activities consisted of the following: (1) maintaining a card system of sums due and paid on her rental properties, (2) filing bills and receipts, (3) computation of her income tax, and (4) writing letters to real estate and stock brokers, taxing authorities, and the Internal Revenue Service. Most of this work was done in the family room of the house, although some work was also done in other rooms. Petitioner used her automobile to visit her rental properties in order to collect rent. Because the tenants failed to pay rent on time or in the proper amount, petitioner often had to visit the properties several times a month in order to collect the rent. These properties were located an average of 60 miles round trip from petitioner's home. Petitioner *271 also used her automobile to visit her banker and her broker. Her bank, located in Los Angeles, was on her way to her Los Angeles investment properties, while her broker was in Beverly Hills, approximately 100 miles round trip from petitioner's home. During the taxable year in question, petitioner attended school, which was approximately 70 miles from her home, three times a week. She also admitted to using her car to visit her family and to attend church. Petitioner deducted the following real estate taxes on her 1967 return: AXES - 1967-68
V. Beaudry Mts.
$ 43.80
LSM
8.02
Tr. 3777 L 81-82
93.81
112.57
Hol. Hts. Pn. 80
201.43
(+ $351.13 int.)
Palm Se. 28NR11W
1902.41
Irrig. Dist. Assess.
160.20
CPH #2
22.24
PS Tr. #2 L ss 22
209.54
Nor. 8225 L 8 B c
213.33
Pet. Gard. L24 B7
154.15
Tr. 26841 L 1
825.57
P.S. Assess.
43.04
Norw. Assess.
71.36
(+ $ 13.49 int.)
Norw. Assess.
42.78
PID
235.04
Art. Assess.
78.02
Int.
8.14
P.S. int.
5.45
Total taxes paid
4795.52
Respondent disallowed $3,743 of the claimed deduction for failure to furnish adequate substantiation. [2]
*272 When this case was first set for trial at Los Angeles, California, the Court granted petitioner a continuance following a pretrial conference, for the purpose of seeking as much proof as possible regarding the payment of expenses which respondent had disallowed for lack of substantiation. When this case was heard at Los Angeles, the Court directed the respondent to provide certificates from the tax collectors of San Bernardino, Riverside and Los Angeles Counties which showed the name in which the various parcels of property claimed by the petitioner were assessed and when those assessments were paid. The Court further directed that the record would be held open for 60 days for the purpose of receiving additional evidence. The Court later received from the respondent three groups of documents and a letter of transmittal which indicated that copies of these documents had been sent to the petitioner. These documents were received into evidence and marked as respondent's exhibits B, C and D. Exhibit B consists of those parcels which were assessed in petitioner's name and on which the assessed tax was paid in 1967. It contains the following relevant information: [3]
*273 DESCRIPTION
AMOUNT PAID 4/10/67
AMOUNT PAID 12/6/67
AS LISTED ON PETITIONER'S RETURN Riverside County:
Palm Springs Village
Tract 2, Lot 22
[1] $ 99.52
[2] $104.77
PS Tr. #2 L ss 22 - $209.54
San Bernardino County:
Cedarpines Highlands No. 1
Lot 38
3.96
Lot 19
6.36
Lots 20 & 21
11.92
CPH #2 - $ 22.24
Los Angeles County:
Map Book - Page - Parcel
AMOUNT PAID 4/10/67
AMOUNT PAID 12/1/67
AS LISTED ON PETITIONER'S RETURN
2845 22 27
$ 1.99
$ 2.01
LSM$ 8.02
2845 22 32
1.99
2.01
LSM - 8.02
3023 4 15
509.61
951.21
Palm. Se. 28NR11W - 1902.41
3040 2 2
3.34
9.65
not listed
3040 2 3
3.34
8.65
not listed
3040 2 4
3.34
9.65
not listed
3040 2 5
3.34
8.65
not listed
3040 2 6
3.34
8.65
not listed
(Beaudry's Mountains Lot)
5608 14 6
21.89
21.90
V. Beaudry Mts. - 43.80
(Holson Heights)
6017 4 2
$175.78
$175.57
not listed
6033 3 32
100.17
100.72
Hol. Hts. Pn. 80 - $201.44 (+ $351.13 int.)
6088 15 16
28.01
46.91
Tr. 3777 L 81-82- 93.81
TOTAL TAXES PAID ON THESE PARCELS IN 1967: $2,065.88
*274 Exhibit C contains the certificates from the tax collectors of San Bernardino, Riverside and Los Angeles Counties for which the assessments were paid in 1967 but which were not assessed in petitioner's name. There are two parcels in such exhibit which appear to have been claimed by petitioner on her 1967 return. The first parcel, listed on the return as "Nor. 8225 L 8 B c," is in tract No. 8225, Lot 8, Block C, Norwalk, California. The tax collector's certificate shows that this property is assessed in the names of Jesus D. and Adela Robles. Taxes of $170.81 were paid on April 10, 1967, with a second payment of $106.66 made on December 4, 1967. The second parcel, reported on petitioner's return as "Pet. Gard. L24 B7," is located in Petroleum Gardens, Lot 24, Block 7. The tax collector's certificate shows that this property is assessed to Rubel Garcia and that taxes of $76.54 were paid on April 10, 1967. A second payment of $77.08 was made on December 4, 1967. In his cover letter to petitioner dated February 12, 1973, enclosing copies of all the certificates obtained pursuant to the Court's order, respondent requested that petitioner forward proof that she owned these *275 parcels and that she paid the tax on them. Respondent also noted that the Court had requested petitioner to provide it with letters answering her inquiry to the Palmdale Irrigation District as to whether the taxes paid represented taxes on property or represented special assessments. The letter also pointed out that petitioner should send the requested information directly to the Court by the date until which the record in this case was being held open for the purpose of receiving additional evidence. The only additional evidence which has been received by the Court consisted of the certificates of the tax collectors which were forwarded by the respondent. These were admitted into evidence and the record was closed. No further evidence has been submitted to this Court by petitioner since that time and petitioner has made no motion regarding additional proof she may have. ULTIMATE FINDINGS 1. Petitioner, an investor, sold 100 shares of N.P.M. stock exactly six months after she purchased the stock. Accordingly, her gain on the sale was a short-term capital gain. 2. Petitioner used the family room of her home for the production of income. Since this room was 13 feet by *276 22 feet in size, it represented 15.4 percent of the 1,850 square feet home. Accordingly, she may deduct a proportionate amount of the operating expenses of her home. 3. Petitioner failed to fully substantiate her investment-related travel expenses. She is, therefore, entitled to a smaller deduction than claimed on her return. 4. Petitioner may deduct real estate property taxes of $2,428.25 as allowed by respondent. The additional amount claimed on her return is disallowed. OPINION Issue 1. Sale of Stock Petitioner purchased 100 shares of N.P.M. stock on December 2, 1966, and sold it on June 2, 1967, at a gain. Section 1222(3)[4] defines a long-term capital gain as a "gain from the sale or exchange of a capital asset held for more than 6 months." [Emphasis added.] It is undisputed that the stock in question is a capital asset. The issue before us is the manner of computing petitioner's holding period for the stock. It has long been settled law that the holding period of property is computed by excluding the day of purchase and including the day of sale. In Sheets v. Selden's Lessee, 69 U.S. (2 Wall) 177, 190 (1864), *277 the Supreme Court, discussing the interpretation of contracts and statutes, said "Where time is to be computed from a particular day or a particular event…[the proper method of computation] is to exclude the day thus designated, and to include the last day of the specified period." This method is the one currently used by the respondent. Rev. Rul. 70-598, 1970-2 C.B. 168. See also Rev. Rul. 66-7, 1966-1 C.B. 188. This manner of computation was approved in E. T. Weir, 10 T.C. 996, 1000-1001 (1948), affd. 173 F.2d 222 (C.A. 3, 1949). We therefore hold that petitioner's holding period for the N.P.M. stock began on December 3, 1966, and, when she sold the stock on June 2, 1967, she had held the stock for exactly six months. Accordingly, since section 1222(3) requires a holding period of more than six months, we find that petitioner realized a short-term capital gain on the sale of her stock. Issue 2. Deduction for Home Office On her 1967 return, petitioner deducted $500 which represented that portion of her housing costs allocable *278 to the portion of the home set aside as a home office. Petitioner stated at trial that, based on what she felt was a fair rental of her home ($350 per month), she did not feel that a deduction of $500 was unreasonable. Respondent allowed only $112 of this amount, which represents 7.7 percent of petitioner's expense of maintaining the home (7.7 percent representing that portion of the home occupied by the average-sized room thereof). Since petitioner has not maintained that she is in the trade or business of managing property, she is limited to a deduction under section 212 which allows her to deduct: * * * all the ordinary and necessary expenses paid or incurred during the taxable year - (1) for the production or collection of income; (2) for the management, conservation or maintenance of property held for the production of income; or (3) in connection with the determination, collection, or refund of any tax. However, the burden of proving entitlement to and the amount of deduction under this section is upon the petitioner. Rule 142, Tax Court Rules of Practice and Procedure.
*279 We recently stated in Stephen A. Bodzin, 60 T.C. 820, 825 (1973) that: * * * [the] applicable test for judging the deductibility of home office expenses is whether, like any other business expense, the maintenance of an office in the home is appropriate and helpful under all the circumstances. [Emphasis added.] We are satisfied from the record that petitioner is entitled to a deduction for home office expense. [5] The only remaining question is the amount of the deduction to which she is entitled. There is no evidence in the record of the overhead costs incurred by petitioner during 1967 in the operation of her home for such items as insurance, utilities, taxes and interest on her mortgage, if any. However, we are convinced that she did incur some expenses in the operation of her *280 home office and we apply the rule in Cohan v. Commissioner, 39 F.2d 540 (C.A. 2, 1930). [6] We reject the respondent's allowance of $112 which was computed on a basis of an average-sized room in petitioner's home, since petitioner has proved to our satisfaction that she used the family room as an office. Since the record is not clear on whether the size of that room was 13 feet by 22 feet or 13 feet by 26 feet, we follow the admonition of the Cohan court and take the lower figure which gives us a percentage of 15.4 which applied to respondent's allowance of $112 based on a percentage of 7.7 percent entitles petitioner to a deduction of $224. We decline to allow petitioner a deduction for the allocable portion of depreciation on her *281 home since she has made no showing of the factors necessary for computing her depreciation deduction; that is, cost or the lower of fair market value or adjusted basis on the date of conversion from a personal residence to an office, salvage value or useful life. See sections 1.167(a)-1 and 1.167(g)-1, Income Tax Regs. The burden of proof rests with petitioner and she has failed to provide us with the necessary information. Issue 3. Investment-Related Travel Expenses On her 1967 return, petitioner deducted $1,500 as the cost of traveling 15,000 miles for investment purposes. Respondent allowed only $120 of these expenses, disallowing the remainder for lack of substantiation. It is not disputed that an investor or one engaged in managing rental property may deduct travel expenses.[7] In her letters to respondent and at trial, petitioner has alleged that she drove between 26,000 and 30,000 miles during 1967. She further alleges that the few notes that she made from time to time regarding her mileage in 1967 were pilfered from her home. She offered no documentary evidence to support *282 her testimony regarding the total mileage driven or the investment-related mileage driven. Based upon all the evidence and applying the rule in Cohan v. Commissioner, supra, we allow petitioner a deduction of $254.40 for automobile travel related to her investment activities. Issue 4. Real Estate Taxes On Her return for 1967, petitioner deducted $4,795.52 as real estate taxes paid. Respondent's position is that petitioner may only deduct the real estate taxes paid in 1967 on property which was assessed in her name in that year. He relies on section 164(a) (1) which permits the deduction of real estate taxes only in the year paid and on section 1.164-1(a), Income Tax Regs., which states that "[in] general, taxes are deductible only by the person upon whom they are imposed." We approved the validity of this section of the regulations in Virginia M. Cramer, 55 T.C. 1125, 1130-1131 (1971). *283 An examination of the certificates provided by the tax collectors of Los Angeles, San Bernardino and Riverside Counties pursuant to our order indicates that only $2,065.88 was paid on property assessed in the name of petitioner. Despite the fact that the Court held the record open for 60 days to allow petitioner an opportunity to substantiate her claim that she owned the parcels claimed on which the tax was not assessed in her name and that she had paid the taxes thereon in 1967, no further evidence was forthcoming. Many of the items claimed as taxes appear to be special assessments which are not allowable deductions. Section 164(c) (1). Petitioner failed to offer any proof regarding her entry of "Tr 26841 L 1," and is, therefore, not entitled to the $825.57 claimed therefor. In summary, the record seems to support a deduction of only $2,065.88. However, since respondent has allowed petitioner a deduction of $2,428.25, we will accept such amount as the deduction for real estate taxes and not disturb respondent's allowance. * * * In her opening brief petitioner, for the first *284 time, claimed a casualty loss to her real estate of $129,673 which she contends resulted from vandalism and mob riots. Such deduction was not claimed on her income tax return, in her petition, or during the course of the trial. There is no evidence of such loss in the record. The Court will not, therefore, consider such a claim. Eleanor C. Shomaker, 38 T.C. 192 (1962). * * * Decision will be entered under Rule 155. Footnotes
1. It is not clear from the record whether petitioner filed her return with the district director of internal revenue at Los Angeles or with the IRS Service Center at Ogden, Utah. ↩
2. Respondent conceded on brief that the taxpayer should be allowed a deduction of $2,428.25 or $1,375.73 more than was allowed in the statutory notice of deficiency. ↩
3. The fourth column reflects the reference to the property on the supplement attached to petitioner's 1967 income tax return. ↩
1. This includes one-half of a $12.45 special assessment. ↩
2. This includes a $11.04 special assessment. ↩
4. All references are to the Internal Revenue Code of 1954, unless otherwise indicated. ↩
5. We have earlier rejected respondent's contentions, based on Rev. Rul. 62-180, 1962-2 C.B. 52, that the use of a home office must be required rather than voluntary, Stephen A. Bodzin, 60 T.C. 820, 825 (1973), and that an allocation be made on availability of use rather than on actual use, George W. Gino, 60 T.C. 304, 313↩ (1973). 6. Cohan v. Commissioner, 39 F.2d 540 (C.A. 2, 1930) at 543-544: Absolute certainty [in reconstruction without records] * * * is usually impossible and is not necessary; the [Court] should make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making. ↩
7. See Martha E. Henderson, T.C. Memo 1968-22↩ and Louis H. Mayer, a Memorandum Opinion of this Court dated June 13, 1951.