RUDOLPH AND YOLANDA BAIE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8211–78.    Filed April 23, 1980.

Yolanda Baie, pro se.
*Alvin B. Sherron,* for the respondent.

NIMS, *Judge:* Respondent determined a deficiency of $581 in petitioners' income tax for the year 1976. Concessions having been made, the issue for decision is whether petitioners are entitled to a deduction for business use of their residence.

## FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and the attached exhibit are incorporated herein by this reference.

At the time of filing their petition, petitioners resided in Downey, Calif.

During the taxable year 1976, petitioner Yolanda Baie (hereinafter referred to as petitioner) operated a hotdog stand known as the "Gay Dog." The stand is located at 9009 Gallatin Road, in Downey, Calif., approximately seven-tenths of a mile from petitioners' residence.

The hotdog stand was originally built as part of a franchise operation and was essentially designed to sell only hotdogs and hamburgers. After petitioner began operating the Gay Dog, she realized that her clientele desired more variety in the food offered since many of them would eat at the stand daily.

The interior dimensions of the stand are 10 by 10 feet. Virtually all of that space is required to package and distribute the food. It became evident to petitioner that in order to serve a greater variety of food, additional equipment, particularly slicers, ovens, and freezers, would have to be acquired. However, expanding the size of the stand to provide additional space for this equipment was not considered a viable option since the premises were leased on a franchise basis; evidently, there would have been some difficulty in obtaining approval from the authorized agents of the franchising company.

As a consequence, petitioner decided to prepare the additional food at home. A freezer was acquired for more storage space. Much of the Gay Dog's food, which now includes various meats, stews, and soups, is cooked at home in petitioner's kitchen where it is then weighed, packaged, and placed in the freezer for storage. With the exception of fresh produce, all of the food preparation is done at petitioner's home. Her kitchen, however, is still used for personal purposes. The final product is sold only on the premises of the Gay Dog.

Most of the food items and ingredients are acquired by petitioner, herself, either at wholesale or at discount retail stores. Whatever deliveries she does receive are made to the hotdog stand.

Petitioner also uses a second bedroom in her home exclusively for office space. That room, which contains a desk, an adding machine, and a typewriter, is used for attending to the records or other paperwork of the Gay Dog's operation.

The square footage for petitioners' residence and the respective rooms is as follows:

| | | |
|---|---:|---|
| Kitchen ........................... | 84 | square feet |
| Home office .................... | 159 | square feet |
| Remaining area ............... | 757 | square feet |
| Total area ................... | 1000 | square feet |

On their 1976 tax return, petitioners claimed a home office deduction in the amount of $1,127. This amount was arrived at by determining the percentage area which the kitchen and home office occupied vis-a-vis the total area of the residence, and then multiplying this percentage figure by the rent which petitioners paid for their residence in 1976.

## OPINION

During 1976, Yolanda Baie, one of the petitioners herein, was the proprietress of the "Gay Dog." Despite the slightly recherche connotations of its nomenclature, the Gay Dog was a prosperous hotdog stand on a busy street in Los Angeles. The premises from which the hotdogs and other food items were dispensed measured 10 by 10 feet and, appropriately, to describe them to the Court, Mrs. Baie produced a shoebox with photographs of the four interior and four exterior sides pasted in their appropriate places in the shoebox.

Because of the extremely cramped nature of the premises from which the selling was done, Mrs. Baie found it necessary to prepare food in the kitchen of her home, located seven-tenths of a mile from the Gay Dog, and to transfer the food and other supplies daily from her home to the hotdog stand. Mrs. Baie did all of her bookkeeping in another room in her home used exclusively for that purpose. She used her kitchen, partly for Gay Dog purposes and partly for preparing food for herself and her family.

Mrs. Baie, who presented her own case, impressed the Court as being an honest, straightforward, hard-working American taxpayer, and we have no reason to question her testimony as to the uses to which she put the kitchen and the extra room in her dwelling place. On their 1976 return, petitioners claimed $1,127 as a home office expense, which deduction respondent has disallowed under section 280A.

Section 280A(a) enunciates a general rule for disallowing expenses which are attributable to the business use of a home:

Except as otherwise provided in this section, in the case of a taxpayer who is an individual or an electing small business corporation, no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence.

The limited exceptions to this general rule are set forth in section 280A(c) which provides in pertinent part as follows:

(c) EXCEPTIONS FOR CERTAIN BUSINESS OR RENTAL USE; LIMITATION ON DEDUCTIONS FOR SUCH USE.—

(1) CERTAIN BUSINESS USE.—Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis—

(A) as the taxpayer's principal place of business,

(B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or

(C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business.

In the case of an employee, the preceding sentence shall apply only if the exclusive use referred to in the preceding sentence is for the convenience of his employer.

(2) CERTAIN STORAGE USE.—Subsection (a) shall not apply to any item to the extent such item is allocable to space within the dwelling unit which is used on a regular basis as a storage unit for the inventory of the taxpayer held for use in the taxpayer's trade or business of selling products at retail or wholesale, but only if the dwelling unit is the sole fixed location of such trade or business.

Respondent maintains that since petitioner did not fall within any of the exceptions set forth in section 280A(c), the general rule of nondeductibility contained in section 280A(a) precludes petitioner from deducting the items at issue.

Section 280A was added to the Internal Revenue Code by the Tax Reform Act of 1976[2] to provide "definitive rules relating to deductions for expenses attributable to the business use of homes." S. Rept. 94–1236 (1976), 1976–3 C.B. (Vol. 3) 807, 839. Prior to the enactment of section 280A, this Court had allowed a deduction for an office in an employee's residence on the grounds that the maintenance of such office was "appropriate and helpful" under the circumstances.[3] Congress felt that clear-cut rules governing deductibility were needed because of the

[2]Pub. L. 94–455, 90 Stat. 1520.

[3]*Bodzin v. Commissioner*, 60 T.C. 820 (1973), revd. 509 F.2d 679 (4th Cir. 1975).

administrative burdens which resulted from requiring taxpayers to substantiate the business element of what is normally a personal item (i.e., maintenance of a residence). Additionally, there was the concern that, under the standards adopted by some courts (particularly this Court), those which were otherwise personal expenses were being allowed as deductions.[4]

In light of the above legislative background, we reluctantly conclude that petitioner is not entitled to deduct any of the expenses claimed here, as she fails to qualify under any of the enumerated exceptions. We cannot agree with her argument that the portions of her home which were used in connection with operating the Gay Dog constituted her principal place of business. This contention is simply not supported by the facts. It is readily apparent that, for purposes of the exception contained in section 280A(c)(1)(A), the hotdog stand, itself, was petitioner's *principal*[5] place of business.

Nothing in the legislative history of section 280A or the Commissioner's regulations furnishes any guidance as to the scope of the "principal place of business" concept in the context of section 280A. We therefore take it that what Congress had in mind was the focal point of a taxpayer's activities, which, in the case before us, would be the Gay Dog itself.[6]

The sales of petitioner's fast food product generated her income. Even though preliminary preparation may have been

---

[4]"In the absence of definitive controlling standards, the 'appropriate and helpful' test increases the inherent administrative problems because both business and personal uses of the residence are involved and substantiation of the time used for each of these activities is clearly a subjective determination. * * * Thus, expenses considered nondeductible personal, living, and family expenses might be converted into deductible business expenses simply because, under the facts of the particular case, it was appropriate and helpful to perform some portion of the taxpayer's business in his personal residence. [S. Rept. 94–938 (1976), 1976–3 C.B. (Vol. 3) 49, 185.]"

This report also cited *Anderson v. Commissioner*, T.C. Memo. 1974–49, as another case where this Court applied the "appropriate and helpful" standard.

[5]Defined in Black's Law Dictionary 1355 (4th ed. 1951), as "[c]hief; leading; most important or considerable; primary; original. Highest in rank, authority, character, importance, or degree."

[6]In our recent decision in *Curphey v. Commissioner*, 73 T.C. 766, 776 (1980), we noted that "section 280A(c)(1)(A) requires a determination as to whether, with respect to a particular business conducted by a taxpayer, the home office was his principal place for conducting that business." Such determination was unnecessary since respondent had conceded that if the taxpayer's rental activities constituted a trade or business (and not merely an activity for the production of income), then his home office was the principal place of business with respect to those activities.

beneficial to the efficient operation of petitioner's business, both the final packaging for consumption and sales occurred on the premises of the Gay Dog.[7] Consequently, petitioner does not qualify under the principal place of business exception contained in section 280A(c)(1)(A).[8]

Petitioner also argues that section 280A is confined solely to home office situations. Petitioner claims that her residence was utilized for the preparation of food; in other words, a "manufacturing facility" apart from her small retail outlet. Petitioner maintains that since a manufacturing facility is not a home office, section 280A cannot preclude the deductions at issue. We find this argument ingenious and appealing, but, unfortunately, insufficient to overcome the unambiguous mandate of the statute.

Section 280A provides a broad general rule requiring disallowance of deductions attributable to the business use of a personal residence, irrespective of the type or form of business use. It is true that the potential for abuse in this area was typified by the situation where a taxpayer would make a dubious claim for a home office deduction. S. Rept. 94–938 (1976), 1976–3 C.B. (Vol. 3) 49, 183–185. Unfortunately for the petitioners here, the words of the law which Congress passed are straightforward and much broader in their applicability—sufficiently broad as to catch petitioners in their net. We are not, therefore, at liberty to "bend" the law, much as we may sympathize with petitioner's position.

Congress made some exceptions, as a matter of fact, so that the business use of a home could, in a few situations, extend beyond mere home office situations. Section 280A(c)(2), for example, contains an exception in the case where a portion of the taxpayer's home is used as storage for inventory which the taxpayer holds for use in the trade or business of selling

---

[7]We again note that petitioner used her kitchen for personal purposes and, thus, did not satisfy the "exclusively" requirement of sec. 280A(c)(1). Although petitioner's bookkeeping room was used exclusively for the business matters of the Gay Dog, it is readily apparent that such room did not constitute the focal point (principal place) of the Gay Dog's business operations.

[8]The exceptions contained in sec. 280A(c)(1)(B) and (C) are likewise not applicable since petitioner's business did not consist of meeting or dealing with patients, clients, or customers, and since the deductions were not claimed with respect to a separate structure which was not attached to petitioner's home.

products at retail or wholesale, but only if the dwelling unit is the *sole* fixed location of the taxpayer's place of business. Since her residence is not petitioner's *sole* place of business, this exception does not help her. Nor do any of the exceptions contained in section 280A(c)(1), quoted above, fit the situation.

*Decision will be entered under Rule 155.*