STANLEY D. POMARANTZ and LINDA BURNETT POMARANTZ, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pomarantz v. Commissioner
Docket No. 34273-83.
United States Tax Court
T.C. Memo 1986-461; 1986 Tax Ct. Memo LEXIS 143; 52 T.C.M. (CCH) 599; T.C.M. (RIA) 86461; September 22, 1986. *143 Arthur H. Boelter, for the petitioners. Donna F. Herbert, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency in petitioners' *144 Federal income tax for the taxable years 1980 and 1981. After concessions by the parties, the sole issue remaining for decision is whether petitioners are entitled to a deduction for "home office" expenses under section 280A. [1]
FINDINGS OF FACT Petitioners Stanley D. Pomarantz and Linda Burnett Pomarantz, husband and wife, resided at 131 Madrona Place East, Seattle, Washington, at the time they filed their joint petition in this case and at all other relevant times. Petitioners timely filed joint Federal income tax returns for the taxable years 1980 and 1981. Because the issue in this case concerns only the activities of petitioner Stanley D. Pomarantz, all subsequent references to petitioner in the singular will refer to him. Petitioner is a licensed physician specializing in emergency care. From January 1, 1980, through August 12, 1980, petitioner conducted his medical practice as a sole proprietorship. On August 13, 1980, petitioner began conducting his medical *145 practice through a newly incorporated professional service corporation, Stanley D. Pomarantz, M.D., Inc., P.S. The registered office for the corporation was at petitioners' residence. During the taxable years in issue petitioner was the sole employee of the corporation. During the taxable years in issue, petitioner treated patients as a regular emergency room physician at Riverton General Hospital, Seattle, Washington. Petitioner was not an employee of Riverton General Hospital. Instead, petitioner as a sole proprietor, and later as an employee of his corporation, acted as an independent contractor engaged in rendering services to the hospital. Patients who were treated by petitioner at Riverton General Hospital during the taxable years 1980 and 1981 were responsible for payment of medical care costs directly to petitioner. However, during the years in issue Riverton General Hospital performed billing and accounting services on behalf of petitioner, and later his corporation, for a fee. Petitioner along with five other emergency room physicians, entered into an agreement with Riverton General Hospital, which required that a physician be present at the hospital to provide *146 emergency medical care at all times. The associated physicians, operating under the name Riverton Emergency Physicians, satisfied the agreement with Riverton General Hospital by working shifts of from 10 to 24 hours. During the taxable years in issue, petitioner worked the equivalent of 5-1/2 to 6, 24-hour shifts per month or about 33 to 36 hours per week. During a 24-hour shift, roughly 14 to 16 hours were spent actually treating patients. The remainder of his shifts were generally devoted to completing patient charts, performing patient follow up work, or, if the workload allowed, relaxing or sleeping. Riverton General Hospital did not provide petitioner with a private office. When not treating patients, petitioner spent the remainder of his hospital shifts in portions of the emergency care facilities of Riverton General Hospital referred to as the work area, the call room, and the physicians lounge. The work area is a small communal area in which the emergency room physicians and nurses work while on duty, but not physically treating patients. The work area contains telephones, desk space, and seating for four persons. Bookshelves in this area contain various medical journals, *147 textbooks, and handbooks dealing with emergency medicine and related topics. These materials belonged to the emergency department of the hospital, and not petitioner. Petitioner kept no personal possessions in this area. The call room provides a place where the emergency room physician may relax, make telephone calls, read, or write. The room contains a small desk, telephones, and a bed, but no bathroom. The room also contains a metal storage locker in which the physician on duty may secure personal possessions. However, the key to the storage locker is turned over to the physician working the next shift and petitioner did not keep any personal items there. Adjacent to the call room was the physicians' lounge. On occasion petitioner used this lounge, which was available to all physicians in the hospital, to complete patient charts. During the taxable years in issue, petitioner used a room over the garage at his home exclusively as an office. The home office contained a desk and chair, telephone, bookshelves, and filing cabinets. Petitioner maintained an extensive library of medical journals in this office as well as various medical texts and other medical publications. The *148 business records of Stanley D. Pomarantz, M.D., Inc., P.S., were maintained in the home office. Petitioner also kept copies of patient charts in this office; however, these had been prepared at the hospital. Petitioner kept abreast of developments in his field of specialty by reading current journals in his home office. During the taxable years in issue, petitioner spent between 150 and 250 hours per year reading medical publications in his home office. Some of these hours were applied toward the annual continuing education that the State of Washington requires of all licensed physicians. Although the type of care petitioner provided his patients was of a very immediate nature, effective treatment would sometimes require that petitioner perform follow up work such as conferring with the patient's regular or admitting physician, reviewing lab test results or X-rays to confirm his initial diagnosis, or seeing that the patient was following the prescribed treatment. However, the majority of patients cared for by petitioner in the hospital emergency room required no follow up. When some follow up was required, petitioner often delegated this responsibility to a nurse or radiologist. *149 Of the follow up actually performed by petitioner, approximately one-half was done from the hospital and one-half from his home office. Petitioner never physically treated patients at his home office. In addition to educational reading and limited patient follow up, petitioner conducted other activities in his home office that were related to his medical practice either as a sole proprietor or as an employee of his corporation. During the taxable year 1981 petitioner, as business manager for Riverton Emergency Physicians, represented the association in an audit of billing practices performed by the Department of Social and Health Service. Petitioner spent time studying the procedures of this agency in his home office. Petitioner also wrote a published report on medical malpractice for emergency physicians. Petitioner also studied for and passed the examination for an advanced cardiac life support course. In certain weeks the time required in these additional activities surpassed the amount of time petitioner spent treating patients at the hospital. In most weeks, however, and as an average, petitioner spent more time per week working shifts at the hospital than working in his *150 home office. On their joint Federal income tax return for the taxable year 1980, petitioners claimed a deduction on Schedule C, Profit or (Loss) From Business or Profession, in the amount of $1,454 representing the expense of maintaining the home office by petitioner Stanley D. Pomarantz in his medical practice while operated as a sole proprietorship. During the taxable years 1980 and 1981, petitioners received but did not report as taxable income amounts paid by Stanley D. Pomarantz, M.D., Inc., P.S., totaling $3,816 and $3,599, respectively, which represented reimbursement for expenses incurred to maintain the home office. In his statutory notice of deficiency issued on October 4, 1983, the Commissioner disallowed the home office expense claimed by petitioners. Consequently, the Commissioner increased their income by the amount of the home office expense claimed as a deductible expense of the sole proprietorship for the taxable year 1980 and by the amount of reimbursement petitioners received for maintaining the home office from Stanley D. Pomarantz, M.D., Inc., P.S., during the taxable years 1980 and 1981. OPINION We must decide whether petitioners are entitled to deduct *151 under section 280A the cost of maintaining a home office used by petitioner in his medical practice conducted both as a sole proprietorship and as a professional service corporation. More specifically, we must decide whether petitioner's home office constitutes "the principal place of business for any trade or business of the taxpayer" within the meaning of section 280A(c)(1)(A). Prior to the enactment of section 280A as part of the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520, this Court allowed a deduction for an office in the taxpayer's home under section 162 whenever the taxpayer could show that maintaining the home office was "appropriate and helpful" under the circumstances. See, e.g., Bodzin v. Commissioner,60 T.C. 820, 825 (1973), revd. 509 F.2d 679 (4th Cir. 1975). Congress found that the "appropriate and helpful" standard was too lenient and resulted in the conversion of nondeductible personal, living, and family expenses into deductible business expenses.[2] S. Rept. 94-938 (1976), 1976-3 C.B. (Vol. 3) 49, 185. Therefore, Congress decided to implement definitive standards to govern home office deductions. S. Rept. *152 94-938, supra. Consequently, Congress enacted section 280A, which generally prohibits any deduction for the business use of a portion of the taxpayer's residence. Sec. 280A(a). However, section 280A contains various exceptions that allow home office deductions. Section 280A provides: SEC. 280A. DISALLOWANCE OF CERTAIN EXPENSES IN CONNECTION WITH BUSINESS USE OF HOME, RENTAL OF VACATION HOMES, ETC. (a) General Rule. -- Except as otherwise provided in this section, in the case of a taxpayer who is an individual or an S corporation, no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence. * * * (c) Exceptions for Certain Business or Rental Use; Limitation on Deductions for Such Use. -- (1) Certain business use. -- Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis -- (A) [as] the principal place of business for any trade or business of the taxpayer, *153 (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or (C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business. In the case of an employee, the preceding sentence shall apply only if the exclusive use referred to in the preceding sentence is for the convenience of his employer. Because petitioner did not see or treat patients in his home office and the office in question is not detached from petitioners' home, they are allowed deductions for the home office only if it constitutes the principal place of business of petitioner. Sec. 280A(c)(1). Neither the legislative history of section 280A nor its text provide any guidance as to the meaning of the "principal place of business." It seems clear, however, that *154 a taxpayer can have only one principal place of business for each trade or business in which he is engaged. Curphey v. Commissioner,73 T.C. 766 (1980). We have held that the relevant inquiry to determine the taxpayer's principal place of business is to ask whether the focal point of the taxpayer's activities is at the home office. Jackson v. Commissioner,76 T.C. 696, 700 (1981); Baie v. Commissioner,74 T.C. 105, 109 (1980). However, we have been reversed by the courts of appeals on three occasions in which the use of the focal point test has been criticized. Meiers v. Commissioner,782 F.2d 75 (7th Cir. 1986), revg. a Memorandum Opinion of this Court; Weissman v. Commissioner,751 F.2d 512 (2d Cir. 1984), revg. and remanding a Memorandum Opinion of this Court; Drucker v. Commissioner,715 F.2d 67 (2d Cir. 1983), revg. and remanding 79 T.C. 605 (1982). These opinions have criticized the focal point test as placing too much emphasis upon where the taxpayer's work is more visible, e.g., where the goods or services *155 are exchanged, instead of upon the place where the dominant portion of his work is accomplished. Weissman v. Commissioner,supra at 514; see also Meiers v. Commissioner,supra at 79. For example, in Drucker v. Commissioner,supra, the Second Circuit Court of Appeals found that the principal place of business of a concert violinist with the New York Metropolitan Opera was not the performance hall, but was a room in his apartment, which he used exclusively for practice for approximately 30 hours per week. Drucker v. Commissioner,supra at 69. In these cases, the courts of appeal emphasized that, in determining whether the home office was the principal place of business, factors to be considered include the time spent working in the home office and the importance of the home office to the taxpayer's trade or business. Meiers v. Commissioner,supra at 79; Weissman v. Commissioner,supra at 516; Drucker v. Commissioner,supra at 69. However, we need not attempt in the instant case to reconcile the decisions of the courts of appeal *156 with our decisions in this area for we find that, by any standard, petitioner's home office does not qualify as his principal place of business within the meaning of section 208A(c)(1)(A). Petitioner is an emergency room physician who, during the taxable years in issue, treated patients only at Riverton General Hospital. Petitioner regularly worked shifts of from 10 to 24 hours in the emergency room of the hospital, averaging from 33 to 36 hours per week. Petitioner also maintained an office in his home in which he kept medical books and journals as well as records of his professional service corporation. In his home office, petitioner performed limited patient follow up by telephone and studied medical journals. By his own estimation, petitioner spent from 150 to 250 hours per year reading medical texts and journals, which is an average of only 3 to 5 hours per week. Although petitioner would occasionally spend more time in his office than at the hospital during a given week, the record clearly shows that petitioner consistently spent many more hours on duty and treating patients at the hospital than working in his home office. In terms of importance the principal place or *157 focal point of petitioner's business was clearly the hospital. Petitioner diagnosed and treated injuries and illnesses, and consulted with patients, at the hospital. As a practicing physician, the hands-on treatment of patients is the essence of petitioner's profession. Following up on patients whom he had treated was unquestionably an important part of his duties as a physician. Continuing education in a rapidly developing and changing area of medicine such as emergency care is also clearly essential. Nevertheless, we do not find that petitioner's activities conducted in his home office were of sufficient importance to make it his principal place of business under section 208A(c)(1)(A). We have considered the fact that the hospital did not provide petitioner with adequate office space in which to read and study and to perform all patient follow up to the extent necessary. Furthermore, petitioner needed space in which to maintain corporate records. Nevertheless, these facts do not dissuade us from our conclusion that the hospital was the focal point of petitioner's trade or business. Many professions require some work at home, but this does not make the home office the taxpayer's *158 principal place of business.Although his home office was appropriate and helpful, that is simply no longer the standard in light of the desire of Congress to restrict and clarify home office deductions via enactment of section 280A. Because of our holding on this issue, we need not consider whether petitioner maintained his home office for the convenience of his employer, Stanley D. Pomarantz, M.D., Inc. P.S., after its incorporation in August 1980. Sec. 280A(c)(1). Based upon the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in question, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The Court, however, later held that it would no longer follow Bodzin v. Commissioner,60 T.C. 820 (1973), revd. 509 F.2d 679 (4th Cir. 1975). Sharon v. Commissioner,66 T.C. 515↩ (1976).