BYRON K. ANDERSON and CAROLYN ANDERSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; BYRON K. ANDERSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Anderson v. Commissioner
Docket Nos. 8890-80, 19981-80.
United States Tax Court
T.C. Memo 1982-576; 1982 Tax Ct. Memo LEXIS 169; 44 T.C.M. (CCH) 1305; T.C.M. (RIA) 82576; September 30, 1982. Stephen R. Illingworth, for the petitioners. J. Anthony Hoefer, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, *170 Judge: Respondent determined deficiencies in petitioners' Federal income taxes in the amounts of $347.17, $306, and $438 for the taxable years 1976, 1977, and 1978, respectively. Concessions having been made, the sole issue remaining for decision is whether petitioners are entitled to deduct expenses of an office in the home under Section 280A. [1]
FINDINGS OF FACT Some of the facts have been stipulated by the parties and are so found. The stipulation and the exhibits attached thereto are incorporated herein by this reference. Petitioners in docket No. 8890-80 are Byron K. Anderson and Carolyn Anderson, who were formerly husband and wife. Petitioner in docket No. 19981-80 is Byron K. Anderson. At the time they filed their petitions in these cases, petitioner Byron K. Anderson resided in Funk, Nebraska, and petitioner Carolyn Anderson resided in Holdrege, Nebraska. Petitioners filed their joint Federal income *171 tax returns for 1976 and 1977 with the Internal Revenue Service Center, Ogden, Utah. Petitioner Byron K. Anderson filed his individual income tax return for 1978 with the Internal Revenue Service Center, Ogden, Utah. All of these returns for all three years were prepared using the cash method of accounting. Petitioner Byron K. Anderson (hereinafter petitioner) is a nurse-anesthetist practicing at several hospitals in the south central area of Nebraska. At all times relevant to this case, he lived in either a house or an apartment located in Holdrege, Nebraska, where he maintained a home office. Because of the nature of his practice, petitioner did not see patients outside of the hospital setting. He rendered professional anesthesia services to patients in various hospitals. The bulk of his professional practice was centered in three hospitals: Phelps Memorial Health Center in Holdrege (Phelps); the Harlan County Hospital in Alma, Nebraska (Harlan); and Franklin County Memorial Hospital in Franklin, Nebraska (Franklin). Alma is about 25 miles from Holdrege, and Franklin is approximately 50 miles south of Holdrege. As between these three hospitals, petitioner performed the majority *172 of his services at Phelps, located in the same city where he maintained his residence. None of these hospitals provided any office space for petitioner. [2] During the years before the Court, petitioner was not an employee of any of the hospitals in which he practiced. During 1977 and 1978, petitioner was a member of a professional service corporation called Midstate Anesthesia, P.C. (Midstate), located in Kearney, Nebraska, about 30 miles from Holdrege. For 1976 petitioner had reported all of his income from the practice of anesthesiology, along with income from the Messbarger and Brown partnership, on a Schedule C, Profit or (Loss) from Business or Trade. For 1977 and 1978, petitioner reported *173 all of his income from the practice of anesthesiology as wages, salaries, tips, and other employee compensation. Midstate issued Forms W-2, Wage and Tax Statements, for 1977 and 1978, and those W-2's included all of petitioner's professional income as an anesthetist for those years. For 1977 petitioner claimed his home office deductions on Schedule E relating to income from the partnership of Messbarger and Brown, and for 1978 petitioner claimed his home office deductions on Form 2106, Employee Business Expenses. Good Samaritan Hospital in Kearney, Nebraska (Good Samaritan) provided office space to Midstate, which was available for petitioner's use. The office that Good Samaritan provided for the members of Midstate was furnished with at least a desk, a file cabinet, and a conference table. The other seven members of the professional corporation used this office as they needed it. Petitioner was not provided any individual office space at Good Samaritan apart from that provided to Midstate. Since petitioner rarely performed anesthesia services at Good Samaritan, and since the traveling distance between Kearney, Nebraska, and Holdrege, Nebraska was 30 miles, petitioner did not *174 choose to use the office space provided for Midstate. The record does not establish that petitioner's use of his home office was for the convenience of Midstate. Petitioner owned 80 acres of farm land in Phelps County, Nebraska, located 12 miles from Holdrege. Petitioner's Phelps County land was farmed by a tenant, who also farmed several additional parcels that he rented from other people. Petitioner's revenues and losses from the Phelps County farm land [3] were as follows: *175 Net Farm Rental
Years
Gross Receipts
Expenses
Profit (or Loss)
1976
$9,258.24
$7,798.34
$1,459.90
1977
8,986.00
10,056.00
(1,070.00)
1978
4,874.00
9,698.00
(4,824.00)
Petitioner also owned 40 acres of land in Brown County, Nebraska, approximately 165 miles from Holdrege. The Brosn County land had a creek running through it and was primarily recreational, and not used for raising crops. See footnote 3. During 1976 and 1977, petitioner resided with his then wife, Carolyn Anderson, in a house at 1138 Maberly Street, Holdrege, Nebraska. That house had been designed and built with space for an office. In 1976 and 1977, the "office" room in the home was furnished with a desk, chair, lamp, copy machine, adding machine, typewriter, office stationery, professional stationery, file cabinet, waste paper basket, and book shelves for petitioner's professional library. In 1978, having separated from his wife, petitioner resided in a two bedroom apartment, one of which was used as his office. When petitioner moved into the apartment, his furnishings from the "office" room at the family residence were moved into the second bedroom for use there *176 as his office. For convenience each room will be referred to as petitioner's "home office" for the respective tax years involved. During these years, petitioner used his home office to record his anesthesia services as rendered at the various hospitals and to bill the hospitals each month for those professional services. The hospitals billed the patients for petitioner's professional services along with other medical services and then remitted petitioner's share to him. As is the case with most anesthetists, petitioner did not see patients in his home office or in any other office. He saw patients at the hospital only, usually for the first time the day before the operation and then the day of the operation and during the post-operative period. In addition to recording his services and billing the various hospitals for those services, petitioner also used the home office for professional reading relating to his anesthesia practice. Petitioner also used his home office in connection with his Phelps County farm property. Petitioner used the office to pay bills relating to the farm, to keep records and files relating to the farm, and to talk occasionally with his tenant on *177 the telephone regarding operation of the farm. The record does not establish the extent to which the home office was used for such purposes. In all years involved, petitioner's home office was never furnished to accommodate overnight guests, nor was it ever so used. Petitioner may have used his home office on occasion for personal purposes, such as writing a letter or a personal check, but the predominant uses of his home office related to his anesthesia practice and his tenant farm property. Any personal use of the office was minimal. In the tax returns for the years in question, petitioner claimed deductions for the cost of maintaining his home office. In his notices of deficiencies dated March 11 and August 21, 1980, respondent disallowed those claimed deductions. There is no dispute as to the amounts involved, but respondent disputes the deductibility of any amount. OPINION The issue for decision is whether petitioner is entitled to deduct home office expenses under section 280A. Petitioner argues, first, that his principal place of business as a practicing nurse-anesthetist is his home office and, second, that his principal place of business for his second business *178 of farm management is his home office. Respondent argues, first, that petitioner's principal place of business is one or more of the hospitals in which he practices anesthesia, not his home office, and, second, that petitioner's activities in managing his farm are not sufficiently systematic, regular and continuous to constitute a separate trade or business. We agree with respondent and hold that petitioner may not deduct the claimed home office expenses. Section 280A lays down the general rule that expenses with respect to the use of a taxpayer's residence are not deductible. Sec. 280A(a). To this general rule of nondeductibility, section 280A(c) creates three narrow exceptions, exceptions intended to state "definitive rules" for the deductibility of expenses attributable to the business use of a taxpayer's residence. S. Rept. No. 94-938 (1976), 1976-3 C.B. (Vol. 3) 182, 185. Petitioner relies on only the first exception, the principal place of business exception, and under the facts of record that is the only exception that could be applicable to this case. In addition *179 to establishing that his home office was his principal place of business within the meaning of section 280A(c)(1)(A), petitioner must also satisfy the general requirements of section 280A(c)(1) by establishing that he used his home office "exclusively" and "on a regular basis" for his trade or business and if he was an employee he must establish that such exclusive use was for the convenience of his employer. [4]
*180 Here petitioner must show that his home office was his principal place of business. Sec. 280A(c)(1)(A). A taxpayer may have only one principal place of business for a particular trade or business. Drucker v. Commissioner, 79 T.C.     (filed September 30, 1982) at 14 of Slip Opinion; Green v. Commissioner,78 T.C. 428, 433 (1982); Jackson v. Commissioner,76 T.C. 696, 700 (1981); Baie v. Commissioner,74 T.C. 105, 109 (1980); Curphey v. Commissioner,73 T.C. 766 (1980), on appeal (9th Cir. Nov. 24, 1980). [5] The test applied by this Court is whether the home office is the "focal" point of a taxpayer's activities in his particular trade or business, and this test is a factual one, depending upon the facts and circumstances of each case. Drucker v. Commissioner,supra at 14 of Slip Opinion; Green v. Commissioner,supra at 433; Jackson v. Commissioner,supra at 700; Baie v. Commissioner,supra at 109. *181 Petitioner argues that his home office constituted the focal point of his trade or business as a practicing nurse-anesthetist. He reasons that the key element of his practice was the function of recording and accounting for services rendered to patients and billing the hospitals for such services, which petitioner did from his home office. Underlying this argument is petitioner's assertion that it was the accounting and billing for his services that generated his income. We are not persuaded. Petitioner was a nurse-anesthetist, not a bookkeeper or an accountant. [6] The services that petitioner was engaged to perform were to administer anesthesia to patients before surgery and to care for the patients immediately after surgery as they came out from anesthesia. It was these services for which petitioner was compensated and which consequently generated his income. Those services were performed at the various hospitals in which he practiced, not at his home office. *182 In the case of a true independent contractor or independent professional performing services for a large number of clients, customers or patients in a large number of places, it may well be that such a taxpayer's home office may be the focal point of his trade or business, being the place where he spends the greater part of his time (when compared to other possible focal points) in coordinating his business activities. [7] However, the facts of this case do not pose such a situation. *183 Petitioner testified that the bulk of his professional services were rendered at the three hospitals: Phelps Memorial, Harlan County, and Franklin County. And, of those three, petitioner also testified that most of his time was spent at Phelps Memorial in Holdrege. The record does not show how much time petitioner spent at Phelps in comparison with the time he spent at his home office. While the relative time at each location is not conclusive, it is a highly persuasive factor. Drucker v. Commissioner,supra at 14 of Slip Opinion; Green v. Commissioner,supra at 433; Jackson v. Commissioner,supra at 700. [8] Petitioner failed to introduce any evidence on this issue. Petitioner's use of his home office for his professional library and professional reading is relevant, but is not sufficient to carry his burden of persuasion. Rule 142(a). Petitioner also argues that his home office was both a medical and a business necessity. [9] We sympathize with petitioner's *184 predicament, but we, as he, must deal with the statute as Congress wrote it. The fact that certain work relating to his anesthesia practice, such as recordkeeping, billing, and professional reading, had to be performed at his home is not determinative. Necessity alone does not render petitioner's home office his principal place of business. [10] Accordingly, upon this record we must conclude that petitioner's home office was not his principal place of business in his practice as a nurse-anesthetist. *185 Because we hold that petitioner's office was not his principal place of business as a nurse-anesthetist, we need not address the other issues involved--whether he was an employee of his professional corporation, Midstate Anesthesia; if so, whether his use of his home office was for the convenience of his employer; and whether his home office was used "exclusively on a regular basis" in his anesthesia practice. Alternatively, petitioner argues that his home office expenses are deductible because they were incurred in a second trade or business, namely, the management of his tenant farm property. This Court recognizes that a taxpayer may have more than one trade or business and consequently more than one principal place of business. Curphey v. Commissioner,73 T.C. at 776-777. Furthermore, Congress has now amended section 280A(c)(1)(A) to ratify and to make retroactive this Court's holding in Curphey. See footnote 4 and Green v. Commissioner,supra at 431, n. 3. That amendment, made retroactive, applies to this case. See Footnote 4 above. Consequently, *186 even though petitioner's use of his home office in his professional practice as a nurse-anesthetist will not support a deduction, he may be entitled to a deduction based on another trade or business, if the requirements of section 280A(c)(1) are otherwise met. Petitioner argues that his management of the farm in Phelps County constituted a second trade or business, conducted principally from his home office. Respondent does not dispute that petitioner's home office was the principal place from which petitioner managed his farm property but disputes petitioner's threshold contention that his farm activities constituted a second trade or business. The central issue here, then, is whether petitioner's management of his farm property constituted a second trade or business for purposes of section 280A. The test is whether a taxpayer's activities are sufficiently regular, systematic, and continuous to justify a conclusion that petitioner's activities constitute a trade or business. Curphey v. Commissioner,73 T.C. at 775. Whether this regular, systematic, and continuous *187 test stems from the statutory requirement of a "trade or business" or the statutory requirement of a "regular" use is unimportant since the test is the same. See sec. 280A(c). Both statutory requirements enforce Congress' manifest intention that "[e]xpenses attributable to incidental or occasional trade or business use of an exclusive portion of a dwelling unit would not be deductible." S. Rept. No. 94-938 (1976), 1976-3 C.B. (Vol. 3), 182 at 186-187. Neither Curphey nor any of the cases cited therein stand for the proposition that ownership and management of a single piece of real property for the production of income constitutes a trade or business as a matter of law for the purposes of section 280A. Instead, Curphey emphasizes that while rental of a single piece of real property may constitute a trade or business for the purposes of section 280A, "the issue is ultimately one of fact." 73 T.C. at 772, 775. Curphey also emphasizes that one of the key factors is the scope and extent of the taxpayer's ownership and the management activities. *188 We find that the petitioner has failed to satisfy his burden of persuasion on this issue. See Rule 142(a). While personally farming 80 acres would undoubtedly constitute a trade or business, petitioner had relieved himself of virtually all of the day-to-day responsibilities of farming by employing a tenant farmer. Petitioner testified in vague generalities about using his home office to pay bills, to store records, and occasionally to talk to his tenant on the telephone, but his testimony does not establish that his activities were sufficiently regular, systematic, and continuous as to place him in the business of farm management. Since petitioner is not entitled to the home office expense deduction under section 280A for any of the years, Decisions will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in question, unless otherwise noted. Unless otherwise indicated, any reference to "Rules" is to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner also testified that he was on emergency call for other Nebraska hospitals in Callaway, Lexington, Cozad, Minden, and Oxford, but it is not clear whether he actually performed services at all of those hospitals during the years involved in this case. Any services that petitioner actually performed at those hospitals were minimal in comparison to the services he performed at Phelps, Harlan, and Franklin. None of those hospitals provided petitioner with office space.↩
3. There is some confusion in the record about the two different parcels of land owned by petitioner. Apparently, the 80 acres was actively farmed by a tenant and the 40 acres was recreational land and was not farmed. However, the Form 4835, Farm Rental Income and Expenses, for 1976 listed both the 80 acres in Phelps County and the 40 acres in Brown County. The Form 4835 for 1977 listed the 40 acres in Brown County. The Form 4835 for 1978 did not list acreage but merely identified the farm as being located in Brown County, Nebraska. In view of our disposition of the case, it is unnecessary to resolve this seeming conflict. We assume that petitioner deducted expenses in connection with the Phelps County land, which would be farm business expenses, rather than expenses in connection with the Brown County acreage, which would be personal and non-deductible (except for taxes and interest which would be deductible in any event but as Schedule A itemized deductions from adjusted gross income rather than as business expense deductions above the line).↩
4. Section 280A, as retroactively amended by Pub. L. 97-119, § 113(c), reads in pertinent part: SEC. 280A. DISALLOWANCE OF CERTAIN EXPENSES IN CONNECTION WITH BUSINESS USE OF HOME, RENTAL OF VACATION HOMES, ETC. (a) General Rule.--Except as otherwise provided in this section, in the case of a taxpayer who is an individual or an electing small business corporation, no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence. (c) Exceptions for Certain Business or Rental Use; Limitation on Deductions for Such Use.
(1) Certain Business Use.--Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis-- (A) [as] the principal place of business for any trade or business of the taxpayer, (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or (C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business. In the case of an employee, the preceding sentence shall apply only if the exclusive use referred to in the preceding sentence is for the convenience of his employer. (5) Limitation on Deductions.--In the case of a use described in paragraph (1), (2), or (4), and in the case of a use described in paragraph (3) where the dwelling unit is used by the taxpayer during the taxable year as a residence, the deductions allowed under this chapter for the taxable year by reason of being attributed to such use shall not exceed the excess of-- (A) the gross income derived from such use for the taxable year, over (B) the deductions allocable to such use which are allowable under this chapter for the taxable year whether or not such unit (or portion thereof) was so used. Pub. L. 97-119, Sec. 113(c), 95 Stat. 1635, 1641. Prior to amendment, subsection (c)(1)(A) read, "[A]s the taxpayer's principal place of business." The amendment was made retroactive for tax years beginning after December 31, 1975, except that, for tax years after that date and before January 1, 1980, the amendment applies "only to taxable years for which, on the date of the enactment of this Act, the making of a refund, or the assessment of a deficiency, was not barred by law or any rule of law." Sec. 113(e). Here, the Commissioner's notices of deficiency for the years 1976, 1977, and 1978 tolled the statute of limitations as to those years. Sec. 6503(a)(1). Thus, those years are still open, and the 1981 amendment applies to this case.↩
5. See also Roth v. Commissioner,T.C. Memo. 1981-699; Aab v. Commissioner,T.C. Memo. 1981-620↩.
6. It is quite possible that for 1977 and 1978, petitioner was in the business of being an employee of his professional services corporation rather than an independent contractor nurse-anesthetist. If the hospitals were not the focal point of petitioner's practice as a nurse-anesthetist as an employee, his principal place of business would then seem to have been the headquarters of Midstate Anesthesia is Kearney, Nebraska, not petitioner's home office. See Drucker v. Commissioner, 79 T.C.     (filed September 30, 1982) at 14 of Slip Opinion. If petitioner was an employee during those years, there is no evidence in the record to establish that his use of his home office was for the convenience of his employer. Sec. 280A(c)(1); Hynes v. Commissioner,74 T.C. 1266, 1297↩ (1980).
7. The use of such a home office for other professional activities such as professional reading or business correspondence would be another factor to consider. Examples might be the independent contractor musician or an artist using a home studio. See and compare the majority opinion in Drucker v. Commissioner, 79 T.C.     (filed September 30, 1982). Furthermore, it may well be that the conduct of the taxpayer's trade or business may be sufficiently diffused among a number of places, including the taxpayer's residence, that there may be no "principal place of business" within the meaning of section 280A. Drucker v. Commissioner,↩ 79 T.C.     (filed September 30, 1982) (Tannenward, C.J., concurring).
8. See also Roth v. Commissioner,T.C. Memo. 1981-699↩.
9. Petitioner testified that his home office contributed materially to patient welfare because of the savings in time in locating and contacting him. We are not persuaded that having one less telephone number for hospitals to call so significantly contributed to patient welfare as to justify a conclusion that petitioner's home office was the focal point of his professional practice. Moreover, petitioner also testified that he joined Midstate Anesthesia in order to have more free time, and presumably membership in that professional group ameliorated his problem of emergency calls. ↩
10. See Aab v. Commissioner,T.C. Memo. 1981-620; Weightman v. Commissioner,T.C. Memo. 1981-301; Kastin v. Commissioner,T.C. Memo. 1980-341↩.