ALEXANDER LOPKOFF AND KATHERN A. LOPKOFF, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lopkoff v. Commissioner
Docket No. 4858-81
United States Tax Court
T.C. Memo 1982-701; 1982 Tax Ct. Memo LEXIS 46; 45 T.C.M. (CCH) 256; T.C.M. (RIA) 82701; November 30, 1982. Patrick J. McDivitt, for the petitioners. Byron Calderon, for the respondent. DAWSON
*49 MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined deficiencies in petitioners' Federal income taxes for the years 1977 and 1978 in the amounts of $270 and $774, respectively. Concessions have been made by the parties. The issues remaining for decision area: (1) whether petitioners are entitled to deductions for business office expenses incurred in the home under section 280A; [1] (2) whether petitioners are entitled to deductions for meals incurred in the course of travel to various locations for the purpose of seeking medical treatment; (3) whether petitioners are entitled to claimed business losses incurred in Mrs. Lopkoff's x-ray delivery activities; and (4) whether petitioners are entitled to deductions for amounts paid to charitable organizations as dues and contributions. To facilitate the disposition of the factual issues presented, we will combine our findings of fact and the discussion of the applicable legal principles. Some of the facts have been stipulated and are so found. The *50 stipulated facts and exhibits are incorporated herein by reference. Petitioners Alexander and Kathern Kopkoff, husband and wife, were residents of La Junta, Colorado at the time that they filed their petition herein. Their Federal income tax returns for the years involved were timely filed with the Internal Revenue Service Center at Ogden, Utah. During 1977 and 1978, Kathern Lopkoff was employed as Administrative Assistant to the Chief of Staff for the Veterans Administration Hospital in Fort Lyon, Colorado (hereinafter the VA hospital). Alexander Lopkoff was employed as an engineering and vocational instructor during those same years at Otero Junior College, located in La Junta, Colorado. In addition to his teaching salary, Mr. Lopkoff received retirement and disability payments from the government as compensation for the time he spent in military service. 1. Home Office Expense
Respondent, under section 280A, disallowed petitioners' deductions for an office in the home in the amounts of $432.83 and $486.83 for 1977 and 1978, respectively. The reasons why the home office was established by petitioners are as follows: Due to faulty record keeping, the Federal *51 government had threatened to remove the VA hospital from its list of accredited facilities. If this had occurred, the hospital would probably have closed for lack of funding. Mrs. Lopkoff's work at the VA hospital concerned revamping this paperwork to comply with government standards, and thus insure that the hospital would not lose its accreditation. To accomplish this work by the deadline set by the government, this job required excessive amounts of overtime, for which Mrs. Lopkoff received only minimal additional compensation. Though necessitated by her work, she could not receive approval for additional pay for all the extra hours she put in. Mrs. Lopkoff spent almost all of this overtime in a room in petitioners' home which was set aside specifically for such purpose. The home office was utilized instead of the VA office provided for her because of a lack of sufficient security at the VA hospital plus the enormity of the work to be done, which would have required her to stay quite late. The VA hospital was a totally self-contained psychiatric facility which had only one security person on duty after hours. That person would be of no use in case he was needed by Mrs. Lopkoff, *52 as she worked in the administrative wing and the guard was stationed in the psychiatric ward. These circumstances indicate that it was necessary for Mrs. Lopkoff to work in an area other than at her office at the VA hospital. Realizing this, Mrs. Lopkoff's employer arranged that she have the use of one of the VA hospital's typewriters and all necessary supplies to stock the home office. The office consisted of the typewriter, a desk, chair, stationery, and an extension telephone. While Mrs. Lopkoff used the phone to speak occasionally with other persons concerned with the accreditation, it was essentially there for personal convenience. Mrs. Lopkoff was the only person to use the office. She never greeted clients or met with anyone in the office. Instead, she performed the paperwork that could not be finished at the VA hospital. Petitioners claimed deductions for the home office, computed by taking the costs of maintaining the entire home times a percentage based on the number of rooms in the home. Respondent bases his challenge to the claimed deductions by alleging that the home office (1) was not a requirement of petitioner's work and therefore was not for the convenience *53 of the employer; (2) it was not her principal place of business; and (3) if it were shown that petitioners were entitled to a deduction, section 280A(c) (5) would limit that deduction to zero because the duties performed in the home produced no income. We hold for respondent on the ground that the home office was not Mrs. Lopkoff's principal place of business. As such, we need not consider respondent's other contentions. Although factual patterns may vary, this Court has established a clear rule for determining whether individuals are entitled to deductions for office-in-home expenses. The applicable statute is section 280A. [2] That section provides a number of hurdles that taxpayers must clear before they are eligible to deduct office-in-home expenses for years beginning after December 31, 1975. To qualify for the deductions taxpayers must satisfy all of three tests: (1) the office must be used exclusively for trade or business; (2) it must be for the convenience of the employer; and (3) it must be the principal place of business for a trade or business of the taxpayer. *54 We reject petitioners' assertion that the home office and not the VA hospital was Mrs. Lopkoff's principal place of business. We have consistently held that an employee is in the trade or business of being an employee. Drucker v. Commissioner,79 T.C. 605, 612 (1982); Primuth v. Commissioner,54 T.C. 374 (1970). A taxpayer may have only one principal place of business for each business in which he is engaged. Green v. Commissioner,78 T.C. 428, 433 (1982); Curphey v. Commissioner,73 T.C. 766 (1980), on appeal (9th Cir., Nov. 24, 1980). Since Mrs. Lopkoff performed only one function for the VA hospital, it cannot be said that she was engaged in more than one trade or business when utilizing her home office, and she has not contended otherwise. Therefore, Mrs. Lopkoff had only one principal place of business in her work for the VA hospital. In Baie v. Commissioner,74 T.C. 105 (1980), this Court adopted a "focal point of the activities" test to determine a taxpayer's principal place of business. *55 [3] This test was recently upheld in our opinion in Drucker v. Commissioner,supra. See also, Green v. Commissioner,supra; and Jackson v. Commissioner,76 T.C. 696 (1981). *56 To establish Mrs. Lopkoff's focal point for her activities as an employee, we must therefore examine the nature of her trade or business, the various activities involved, and the locations where those activities were performed. Drucker v. Commissioner,supra, at 613. The nature of her business was as an administrative employee of the VA hospital. This required no activities over and above those of the typical office worker except for the quantity of work that had to be performed in a short period of time. All of the work could have been done in the VA hospital office. As to the location of the work, Mrs. Lopkoff testified that 25 percent of her work during the years in question was performed in the home office. We think that this is very significant. While the number of hours spent at each location alone does not determine whether a home office is the focal point of a taxpayer's trade or business, it is an important factor. Green v. Commissioner,supra at 433. The record here shows that Mrs. Lopkoff was an employee of the VA hospital, *57 she had an office provided for her at that hospital, she performed approximately 75 percent of her work at the hospital office, and any work done at the home office was "take home" work that could not be completed at the VA hospital. This makes it clear that the VA hospital was the focal point of her activities as an employee of that institution, and correspondingly it was her principal place of business. In Bodzin v. Commissioner,60 T.C. 820 (1973), revd. 509 F.2d 679 (4th Cir. 1975), cert. denied 423 U.S. 825 (1975), the case which led to the enactment of section 280A, an attorney who worked for the government was able to deduct a portion of the costs of his personal dwelling by completing work at home that was not finished at his office. This rationale has been rejected by Congress as a basis for deducting office-in-home expenses. See fn. 3, supra.Essentially, Mrs. Lopkoff is in exactly the same situation as the taxpayer in Bodzin. While we may empathize with Mrs. Lopkoff's personal situation, we can see no fact that sufficiently distinguishes it from that of any other employee who has an office provided for him at his *58 worksite and who instead completes his work at home. See Sharon v. Commissioner,66 T.C. 515 (1976), affd. per curiam 591 F.2d 1273 (9th Cir. 1978), cert. denied 442 U.S. 941 (1979); Moskovit v. Commissioner,T.C. Memo. 1982-472 (university professor); Besch v. Commissioner,T.C. Memo. 1982-15 (elementary school principal); Strasser v. Commissioner,T.C. Memo. 1981-523 (university professor); Weightman v. Commissioner,T.C. Memo. 1981-301 (university professor); Cousino v. Commissioner,T.C. Memo. 1981-19, affd. 679 F.2d 604 (6th Cir. 1982) (junior high school teacher); Chauls v. Commissioner,T.C. Memo. 1980-471 (music teachers). See also Drucker v. Commissioner,supra, at 617 (dissenting opinion of Judge Wilbur); and Jackson v. Commissioner,supra.In such situations, no deductions are allowable. While Mrs. Lopkoff may feel compelled to work at home for personal reasons, such reasons, even if justified, do not alter the determination as to the location of her principal *59 place of business. Consequently, she does not qualify under the language of the section 280A(c) (1) (A) exception. As we said in Baie v. Commissioner:
[T]he words of the law which Congress passed [280A] are straightforward and much broader in their applicability-- sufficiently broad as to catch petitioners in their net. We are not, therefore, at liberty to "bend" the law, much as we may sympathize with petitioner's position. [74 T.C. at 110.] We note in passing that previous taxpayers, similarly situated, and with perhaps more compelling facts than in the instant case have been denied deductions through section 280A. Compare Baie v. Commissioner,supra;Jackson v. Commissioner,supra;Cristo v. Commissioner,T.C. Memo. 1982-514. See also Sharon v. Commissioner,supra; and Drucker v. Commissioner,supra.
Accordingly, petitioners do not qualify for an office-in-home deduction for either of the taxable years in question. 2. Business Expense Deductions
Petitioners have five children. In 1977, during the course of remodeling their home, *60 petitioners encountered substantial additional expenses. In order to earn extra cash, Mrs. Lopkoff took on an additional activity that corresponded with her commute to the VA hospital. The activity was an x-ray delivery business. The VA hospital is located in Fort Lyon, Colorado, which is 27 miles east of the LaJunta Medical Center (hereinafter the Medical Center). In turn, the Medical Center is located one-half mile from petitioners' home. The VA hospital entered into a contract with the radiologist at the Medical Center for interpretation of x-ray film. These films had to be delivered to the radiologist for interpretation and then returned to the hospital for use in patient treatment. This necessitated that the hospital enter into a contract for transportation of these x-rays between the two hospitals. The x-rays had to be picked up at the VA hospital after 4:30 p.m. each day, Monday through Friday, except holidays. They would then be transferred to the Medical Center and deposited at its Radiology Department for interpretation by the radiologist. The x-rays had to arrive at the Medical Center no later than 6:00 p.m. These x-rays then had to be picked-up the following *61 morning and returned to the VA hospital prior to 8:00 a.m. If the person who was awarded the contract was unable to pick up and deliver the x-rays involved, the contract provided for a penalty of $8 to be exacted for each occurrance. The VA hospital solicited bids on the contract. The times established for the film pick-up, in addition to the method and route used in accomplishing the task, were set by the terms of the contract itself. In other words, petitioner did not "create" the job or its requirements. The solicitation was posted and held open to the general public for acceptance. The lowest bidder (if acceptable) would be awarded the contract for one year. Mrs. Lopkoff's bids were accepted for portions of the years 1977 and 1978 in the amounts of $50 per month and $98.98 per month respectively. Why she only worked for parts of the year is not here relevant. She testified that the $50 amount was arrived at because she knew that the person who held the contract before her had been paid that much. She increased her bid the following year because she believed that the cost and trouble of transporting the x-rays was not worth only $50 per month. In computing both of *62 the bids, she took into account the amount of out-of-pocket expenses (gas, etc.) she would incur, plus the costs of extra trips that would be required (explained below). She estimated this sum to be $7 to $8 per week. Thus, during the first contract, Mrs. Lopkoff had a $22 out-of-pocket profit per month. During the second contract her profit increased to $70.98 per month. In October, 1978 Mrs. Lopkoff increased her contract bid for the fiscal year 1979 to $150 per month. This was rejected in favor of a lesser bid in the amount of $100. After six months, the person who underbid Mrs. Lopkoff abandoned the contract, and Mrs. Lopkoff was invited to submit another bid. She was awarded the contract for the remainder of the 1979 year at a rate of $98.98 per month. In 1980, the VA hospital discontinued this system of soliciting bids, with the result that Mrs. Lopkoff was no longer eligible to perform the delivery service. The x-rays had to be delivered by a certain time without fail. If, for some reason, Mrs. Lopkoff wished to leave her work early, take a day off, or work late, she would still be required to perform the x-ray delivery. In these instances she arranged for one of *63 her children to drive from the Lopkoff home to the VA hospital and make the delivery for her. Mrs. Lopkoff testified that these extra trips were necessary in 30 to 45 percent of the deliveries. As such, any conflicts with her work at the VA hospital and the delivery business were resolved on behalf of the former. Every scheduled delivery was made during the contract years and therefore Mrs. Lopkoff was never penalized for non-delivery. The x-rays were bulky. The weight of each load would vary from day-to-day, with the average somewhere between 20 and 100 pounds. The excessive weight compared to mass was due to large amounts of silver in the film. On heavy days it was necessary for Mrs. Lopkoff to make more than one trip from the Radiology Department to her car. In their 1977 return petitioners did not report any income nor did they declare a loss from the x-ray delivery operations though a schedule was attached to the return showing a net operating loss of $672.65. In their 1978 return, a net operating loss was claimed from the delivery operations in the amount of $733.81. [4] Petitioners amended their petition for the 1977 year, and now claim the full amount of the loss *64 allocable to that year. Respondent disallowed the losses claimed, but did allow petitioners to take deductions up to the amount of income derived in the delivery business ($424.95 and $434.94 in 1977 and 1978, respectively) under section 183(b). Respondent contends that petitioners are not entitled to the deductions because (1) the amounts claimed represent personal commuting expenses disallowed by section 262; (2) the expenses have not been adequately substantiated as required by section 6001; and (3) the deductions *65 exceed the limitations imposed by sections 183(b) and 165(c). Respondent supports these arguments by contending that petitioners' x-ray delivery activities were not engaged in for profit, and therefore do not amount to a trade or business. Such a finding would also be necessary to hold that the delivery expenses are not allowable under section 262 as personal commuting expenses. Petitioners merely reply that the delivery activities amount to a trade or business, the trips were ordinary and necessary expenses of that business, and therefore they were not personal commuting expenses. Petitioners further conclude that since the activities amount to a trade or business, they were transactions entered into for profit, and therefore the entire amount of expenses associated with the business should be allowed. Because we find that the activities constituted an activity engaged in for profit, we agree with petitioners. The courts have always recognized a distinction between the expenses of travel that are incurred in carrying on a trade or business and those of commuting expenses; that is, those incurred in going from one's residence to one's place of business and returning. The *66 latter expenses have always been categorized as nondeductible personal expenses, regardless of the distance traveled between the residence and the place of business. Section 1.162-2(e), Income Tax Regs.; Fausner v. Commissioner,413 U.S. 838 (1973); Barton v. Commissioner,424 F.2d 1295 (7th Cir. 1970), affirming a Memorandum Opinion of this Court; Riscalla v. Commissioner,337 F.2d 859 (5th Cir. 1964), affirming a Memorandum Opinion of this Court; Mitchell v. Commissioner,42 T.C. 953 (1964), and cases cited therein. This was the law dating back to the Revenue Act of 1913. Commissioner v. Flowers,326 U.S. 465 (1946). To support travel expense deductions a taxpayer must show that the exigencies of business, rather than personal preference as to his place of residence in relation to that business, required the travel. Flowers,supra at 474. If these are purely personal expenses (i.e., merely a commute between petitioners' home and the VA hospital), then they are not allowable under section 262. Section 1.262-1(b)(5), Income Tax Regs. *67 and cases cited above. However, if we determine that the delivery business was in fact a trade or business, then Mrs. Lopkoff's work day began when she arrived at the Medical Center to pick up the x-rays for transport to the VA hospital, and the corresponding expenses are deductible as ordinary and necessary business expenses under section 162(a). [5]
*68 Petitioners bear the burden of proof that they qualify under section 162, which means they must prove that the x-ray business was a profit-oriented activity. Benz v. Commissioner,63 T.C. 375, 383 (1974), Rule 142(a). [6]
There is no definition of a trade or business in the Code or Regulations, but countless cases have strived to define that term. To qualify as a trade or business the petitioners must prove that Mrs. Lopkoff's endeavors were entered into or conducted with the objective of making a profit. Dreicer v. Commissioner,665 F.2d 1292, 1298-1299 (D.C. Cir. 1981), rev'g. and remanding a Memorandum Opinion of this Court, Supplemental, 78 T.C. 642 (1982). The standard had previously been worded in this Court as whether the taxpayer had a bona fide expectation of profit. Wittstruck v. Commissioner,645 F.2d 618 (8th Cir. 1981), affirming a Memorandum Opinion of this Court; Engdahl v. Commissioner,72 T.C. 659, 666 (1979); Dunn v. Commissioner,70 T.C. 715, 720 (1978); *69 Churchman v. Commissioner,68 T.C. 696, 701 (1977); Jasionowski v. Commissioner,66 T.C. 312, 321 (1976); Benz v. Commissioner,63 T.C. 375, 383 (1974); Bessenyey v. Commissioner,45 T.C. 261, 273 (1965), affd. 379 F.2d 252 (2d Cir. 1967), cert. denied 389 U.S. 931 (1967). The activity must be entered into, in good faith, with the dominant hope and intent of realizing a profit. Siegal v. Commissioner,78 T.C. 659, 698 (1982), Hirsch v. Commissioner,315 F.2d 731, 736 (9th Cir. 1963), affirming a Memorandum Opinion of this Court. The difference in the standard of "objective of making a profit" and a "bona fide expectation of making a profit" might be merely be one of semantics. Brannen v. Commissioner,78 T.C. 471, 506 n. 15 (1982). Apparently, the Court of Appeals in the Dreicer case feared we were equating "a bona fide expectation of profit" with a "reasonable expectation of profit." Dreicer v. Commissioner,78 T.C. 642, 644 (1982). However, we have not previously held that a taxpayer's expectation need *70 be a reasonable one. Wittstruck v. Commissioner,supra, and all cases cited within this paragraph. In any event, we think the cases previous to the Court of Appeals decision in Dreicer are compatible with the test "objective of making a profit". Dreicer v. Commissioner,78 T.C. at 645. The proper standard was expressed by the Court of Appeals as "when profit is actually and honestly his objective though the prospect of achieving it may seem dim." 665 F.2d at 1294. Thus, whether the x-ray delivery activity amounts to a trade or business turns on whether it was an activity engaged in which the actual and honest objective of making a profit. Driecer,supra78 T.C. at 645.
"Activity engaged in for profit" is defined in a circular fashion by section 183(c) [7] as that with respect to which deductions are allowable under section 162 or paragraphs (1) and (2) of section 212. *71 Though it may seem strange that we need consider the so-called "hobby-loss" provision (because transporting heavy x-rays day-in and day-out can hardly be any normal person's idea of a hobby), the above statutory path necessarily leads to section 183's door. Section 183 is worded not in the term "hobby" but in the words "activities not engaged in for profit." While Mrs. Lopkoff made an out-of-pocket profit, when all expenses are considered, she did not make a net profit (hereinafter tax profit) from the delivery business. Therefore, we must consider what is meant by the phrase "objective of making a profit" under section 183 and the regulations thereunder. In addition, though section 183 is applicable, the regulations thereunder are generally distilled from prior case law, and the outcome of many cases will be the same whether they involve years beginning prior to or subsequent to the effective date of section 183. Jasionowski v. Commissioner,supra at 321; Benz v. Commissioner,supra at 383. The instant case is a difficult one, with facts present which lean both for and against petitioners. For that reason, we will examine each *72 factor separately, mindful of course that our decision will not be reached by simply adding up a "score," but by attempting to weigh each factor appropriately. Siegal v. Commissioner,supra at 700; Section 1.183-2(b) Income Tax Regs.
In determining whether an activity is engaged in for profit, greater weight is given to objective facts than to the taxpayer's mere statement of his intent. Section 1.183-2(a), Income Tax Regs. Those regulations go on to state: The determination whether an activity is engaged in for profit is to be made by reference to objective standards, taking into account all of the facts and circumstances of each case. Although a reasonable expectation of profit is not required, the facts and circumstances must indicate that the taxpayer entered into the activity, or continued the activity, with the objective of making a profit. Nowhere is the term "profit" defined. In all the cases previously cited, this was presumed to be referring to taxable income, i.e., gross income less expenses incurred. *73 [8]
Under this definition, and according to Mrs. Lopkoff's own figures, she would fail to make any "profit." The gross income to be derived from the contracts would not exceed the expenses incurred in the two years that she held those contracts. However, the fact that she did not make a profit is not dispositive. The question is whether she had the requisite objective. In the second year she took steps to narrow the difference between income and deductions by increasing her bid. In the third year she would have approached break-even if her bid had been accepted, but she was underbid. Thus, while she did not make a tax profit during the years in question, the record herein indicates that Mrs. Lopkoff intended to increase her revenues and minimize her losses, both of which are characteristics of an activity *74 for profit. Moreover, her attempt to raise her bid to $150 indicates to us an objective of making a profit during the years in question. Section 1.183-2(b), Income Tax Regs., lists several factors that should be considered in determining whether or not a transaction is for profit. The relevant factors which apply in Mrs. Lopkoff's case are: (1) the manner in which the taxpayer carries on the activity; (2) the time and effort expended by the taxpayer in carrying on the activity; (3) the taxpayer's history of income or losses with respect to the activity; (4) the financial status of the taxpayer; and (5) what elements of personal pleasure or recreation are involved in the activity. [9] Addressing these seriatim: (1) Mrs. Lopkoff carried on her activities in a businesslike manner--she had to make estimates of expenses, compute her bids in light of competing bids, provide for her children to substitute for her when she could not perform, and she tried to maximize her net revenues. (2) An indication that Mrs. Lopkoff intended to derive a profit is drawn from *75 the fact that she expended a reasonable amount of personal effort in carrying on the activity, especially when one considers that the activity does not have substantial personal or recreational aspects. She had to plan in advance for substitutions when she personally could not perform, the x-rays were not easy to carry, and there was the inconvenience of the delivery itself. (3) We have already indicated that Mrs. Lopkoff had achieved an out-of-pocket profit from the activity, even though it was unlikely she could obtain a tax profit. (4) Mrs. Lopkoff undertook the activity only because of her pressing financial need to bring in some extra cash. (5) There were no elements of personal pleasure or recreation involved.
Of these factors, we attach special significance to the fact that Mrs. Lopkoff had to bid for the job, and she was eventually underbid. This makes it clear that someone else expected to make a gain from the activity. Such competition is the hallmark of the business world. We also deem it significant that all of the requirements pertaining to the job were set by the *76 VA hospital, not Mrs. Lopkoff, and that there were no pleasurable aspects of the activity. Rather, we think the delivery service constituted "work" on Mrs. Lopkoff's part. Taking into account all of the above circumstances, we hold that the x-ray delivery activity was in fact an activity engaged in for profit. Therefore, it qualified as a trade or business under section 162. Nonetheless, respondent contends that under Fausner v. Commissioner,supra, commuting expenses are not allowed. He argues that since Mrs. Lopkoff was commuting to her main job at the VA hospital which she would have done in any event, "petitioners' citation of section 162 will not convert personal commuting expenses disallowed by section 262 into deductible business expenses…." He further contends that the only expenses which Fausner allows petitioners to deduct in this case is the extraexpense incurred from the x-ray delivery activity. Respondent asserts that in this case this constitutes the one-half mile from petitioners' home to the Medical Center. We disagree.
Fausner and the commuting cases following it do not apply here. In those cases the issue was the *77 deductibility of expenses incurred from taxpayers' homes to their first (and in Fausner, only) jobsite. Those cases are distinguishable from the instant case in that in each of them the taxpayers had only one trade or business, and the claimed section 162(a) expenses were in regard to only that one business.Here we have concluded that Mrs. Lopkoff had two trades or businesses. Therefore, her commute was from her home to where she began the first of her trades or businesses, i.e., the Medical Center. [10]
*78 In addition, this is not a situation where the petitioner's only intent is to convert her personal expenses into deductible ones. Mrs. Lopkoff admitted that she considered the savings in her commuting expenses that would result from acquiring the delivery contracts. However, she did not arrange the terms of these contracts. She was simply fortunate enough that her personal situation placed her in the position of having an advantage over other bidders. We think this Court is quite capable of spotting and dealing with those abusive situations that may attempt to conceal nondeductible commuting expenses in the cloak of a purported trade or business. Moreover, we think respondent is incorrect in his assertion that section 262 governs and disallows these deductions. Once petitioners qualify under section 162(a), the travel from the Medical Center to the VA hospital is no longer a "commute". That being so, they are outside the purview of section 262, either because section 162(a) expressly provides for the deduction of these expenses or because they are business, not personal, expenses. As stated in Curphey v. Commissioner,73 T.C. 766, 777-778 (1980): We *79 see no reason why the rule that local transportation expenses incurred in travel between one business location and another are deductible should not be equally applicable where the taxpayer's principal place of business with respect to the activities involved is his residence. * * * The fact that, under such circumstances, a taxpayer has no commuting expenses * * * should not render nondeductible transportation costs which are otherwise ordinary and necessary expenses incurred in pursuit of his business. [Emphasis in the original.] Finally, we think that petitioners have met the burden placed upon them by section 6001, which requires taxpayers to maintain and make available records sufficient to establish the amount of gross income and deductions required to be shown by them on their tax returns.See sections 1.6001-1(a) and 1.6001-1(e), Income Tax Regs.The amount of income Mrs. Lopkoff received is not in issue. As for the deductions, this was sufficiently established by taking the mileage involved multiplied by the amount respondent determines as a reasonable allowance. Since petitioners have established the number of trips performed, no further information is needed to *80 calculate the proper amount. See fn. 4, supra.
Therefore, we hold that the net operating losses incurred in 1977 and 1978 result from properly allowable deductions under section 162(a). 3. Medical Expense Deductions
Certain members of the Lopkoff family needed medical attention. The physicians as well as the facilities that provided such care were located in cities which lay various distances from La Junta. Only those persons who were actually receiving medical care or were needed to transport the patient(s) to the facility because the patient(s) were underage were present on the trips. The trips taken, location of the medical facility, and the approximate distance of those facilities from the petitioners' home are as follows: [11]
No. of Trips
1977
1978
Location
Distance
39
33
Pueblo, Colorado
60 miles
5 3
Air Force Academy Hospital
120 miles
1 1
Garden City, Kansas
155 miles
1 1
Fort Carson, Colorado
108 miles
Respondent admits that the cost of transportation involved in these trips was *81 correctly deducted by petitioners. At issue is whether meals eaten by persons during the trips are includable in those transportation costs. On certain days Mrs. Lopkoff would, immediately after arriving home from work at the VA hospital, put the children that needed medical treatment into the family car and drive to Pueblo. They would arrive at the physician's office just in time for their 7:00 or 7:15 p.m. appointment. Such appointment times were not unusual, and would be offered to all clients of the physician so as not to interrupt their normal workday schedules. After the medical care was received, all persons on the trip would eat dinner in that city in an inexpensive family-style restaurant. When finished, they would embark for home, arriving approximately at 9:30 p.m. Trips to other cities were generally daytime appointments, but the meals would be eaten at the destination city also. [12] Petitioners claimed that they are entitled to deductions for the costs of these meals as part of their transportation expenses. Respondent disallowed the deductions allocable to the meals. We agree with respondent. *82 Section 213(a)(1) allows a deduction for amounts paid during a taxable year for medical care of a taxpayer, his spouse and his dependents. Section 213(e)(1)(B) includes in the definition of "medical care" amounts paid for transportation primarily for and essential to the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure of the body. Both parties concur that each claimed trip was for the purposes of medical care, but do not concur on whether the meals eaten should be included in the calculation of the costs of such transportation. Respondent first contends that those persons accompanying the patients and who did not receive medical care during the trip are not entitled to such deductions. We disagree. We have previously held that travel expenses of persons necessarily accompanying individuals who could not travel alone are deductible. Cohn v. Commissioner,38 T.C. 387 (1962); Cf. Montgomery v. Commissioner,51 T.C. 410 (1968), *83 affd. 428 F.2d 243 (6th Cir. 1970). Respondent further contends that the amount of such meals and whether or not they were actually eaten has not been established as required by section 6001.Our review of the record and the testimony of petitioners leads us to conclude that the $5 claimed per person per meal was in fact expended. Both parties acknowledge that the leading authority in interpreting section 213(e)(1)(B) is Commissioner v. Bilder,369 U.S. 499 (1962), rev'g 289 F.2d 291 (3rd Cir. 1961), which affd. in part and revd. in part 33 T.C. 155 (1959). In Bilder, the Supreme Court disallowed medical deductions claimed for two-month's lodging in a Florida apartment for the taxpayer and his family.The taxpayer's doctor in that case had prescribed that the taxpayer move to Florida to prevent the taxpayer's already poor medical condition from worsening. In holding for the Commissioner, the Supreme Court simply quoted the Committee reports accompanying the enactment of section 213(e)(1)(B) as dispositive of the issue (though the language under section 23(x) of the Internal Revenue Code of 1939, which would have *84 allowed the deductions, was identical to that of section 213(e)(1)(B) of the 1954 Code). The parts of those reports quoted were: "Subsection (e) defines medical care to mean amounts paid for the diagnosis, cure, mitigation, treatment, or prevention of diseases or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance), or for transportation primarily for and essential to medical care. The deduction permitted for 'transportation primarily for and essential to medical care' clarifies existing law in that it specifically excludes deduction of any meals and lodging while away from home receiving medical treatment.For example, if a doctor prescribes that a patient must go to Florida in order to alleviate specific chronic ailments and to escape unfavorable climatic conditions which have proven injurious to the health of the taxpayer, and the travel is prescribed for reasons other than the general improvement of a patient's health, the cost of the patient's transportation to Florida would be deductible but not his living expenses while there. However, if a doctor prescribed an appendectomy and the taxpayer *85 chose to go to Florida for the operation not even his transportation costs would be deductible. The subsection is not intended otherwise to change the existing definitions of medical care, to deny the cost of ordinary ambulance transportation nor to deny the cost of food or lodging provided as part of a hospital bill." H.R. Rep. No. 1337, 83d Cong., 2d Sess. A60 (1954); S. Rep. No. 1622, 83d Cong., 2d Sess. 219-220 (1954), * * * (Emphasis supplied). [369 U.S. at 502-503; emphasis in the original]. The Supreme Court did not consider the deductibility of meals incurred by taxpayers during their transportation from their home to the place where the medical care would be received. Seizing on this, and also on the fact that the language of section 213(e)(1)(B) is not so clear as to preclude resort to legislative history, Bilder,supra, at 504-505, this Court in Montgomery v. Commissioner,supra, declared that the word "transportation" includes the cost of a taxpayer's meals and lodging incurred on trips between cities required for medical treatment. 51 T.C. at 415. The Montgomery case distilled such Congressional *86 intent from the same committee reports quoted in Bilder. Petitioners and respondent both attempt to exclude or include themselves under the literal language of the Bilder test in the light of Montgomery. Thus, petitioners argue that the meals were not eaten while receiving medical care, and therefore are deductible. Respondent answers that since the meals were eaten in the cities where the medical services were rendered, this is at the "place of destination", and therefore the deductions are proscribed under the literal language of Bilder. Petitioners answer this by urging that to draw such a distinction and to determine that because the meals were eaten in the destination city that they were therefore not eaten "in transit" (as allowed in Montgomery) is to draw an illogical and ephemeral distinction based on irrelevant geographic lines. We think that both arguments are not persuasive. Both of these arguments have assumed the basic premise which allows expenses to be deductible under section 213(e), namely, that the amounts paid be "for transportation primarily for andessentialto medical care." Section 213(e)(1)(B), emphasis added. We do not *87 think, and petitioners have not proved, that the meals eaten on these trips were necessary for the receipt of medical care, nor do they fit the definition of the term "transportation." In Montgomery, this Court stated that the definition of transportation in section 213(e)(1)(B) is the "cost(s) required to bring the patient to the critical point."51 T.C. at 414. We stated further in the next paragraph: "We are not bereft of talent to deal with such situations as they arise and to sift out those expenses which are not required to bring the patient to the place of medication." To transport Mrs. Lopkoff's family patients to Pueblo required approximately one hour of driving time. This does not necessarily require a meal to be eaten any more than it would be required of a worker who utilizes his lunch "hour" to see a physician. Because a meal may have been eaten does not mean it eas necessary to receive the medical care. While we acknowledge that Mrs. Lopkoff was an energetic worker and lacked time because of her busy schedule to be able to feed her children *88 before leaving for the doctor's office, such was her personal choice. The medical treatment and the length of transit itself did not dictate that a meal should be eaten, and therefore does not qualify under the definition of transportation in Montgomery, where the taxpayer was transporting his wife by auto from Lawrence, Kentucky to Rochester, Minnesota, a trip of 630 miles. Such a lengthy trip was beyond the capabilities of most persons to accomplish without rest and food, and so the meals and lodging in that case were deemed to be required to bring the patient to the place of medication. We think a trip of 60 miles hardly falls into this same category. Petitioners urge that we should consider the round-trip distance for each of the trips rather than the one-way distance. Thus, the Pueblo trip would become one of 120 miles miles, and so on.Again, we disagree with petitioners. Medical transportation is the cost required to bring the patient to the critical point. Once petitioners arrived in Pueblo, this definition was satisfied. Any meals eaten while in Pueblo were purely *89 personal expenditures, nondeductible under section 262, and not costs of medical transportation. Even if they might be deemed to be such costs, we are not persuaded that a two-hour trip (the 120-mile-round trip) necessitates the eating of a meal. We also think that the longer trips to Fort Carson and Colorado Springs did not require that petitioners eat along the way. The longest trip, to Garden City, Kansas, was 156 miles from petitioners' home. A normal drive would require under three hours to make the trip. Petitioners admit that these were daytime trips. As such, we do not think it unreasonable that a family eating breakfast at, say, 9:00 a.m. and then arriving at 12:00 noon at their destination requires a meal along the way. If the times conflict with the Lopkoffs' schedule, this again is purely a personal concern. We find support in our holding by noting that if, instead of returning immediately after receiving medical treatment, the petitioners rented a motel room to rest the night before beginning their return trip, costs for lodging and meals would certainly not be deductible under Bilder. The only distinction, then, between such a hypothetical situation *90 and the instant case is the mere passage of a few hours. In our opinion Congress did not intend such a distinction. Therefore, it is clear that the definition of transportation in Montgomery addressed itself to the distance between taxpayers' homes and the places where they will receive medical care, not the round-trip distance. Accordingly, the meals eaten during the trips do not qualify as medical expense deductions under section 213(e)(1)(B). 4. Charitable Contributions
Alexander Lopkoff claimed deductions for charitable contributions and dues paid in the amounts of $271.40 in 1977 and $283.50 in 1978, which respondent disallowed.These sums were paid, mostly in cash, to the following organizations: American Legion, Rotary Club, Disabled American Veterans (DAV), and Veterans of Foreign Wars (VFW). Petitioners concede that of these amounts, $169 in 1977 and $182 in 1978, were allocable to meals received at Rotary Club, and thus are nondeductible personal expenditures. This leaves in issue the remaining amounts in each year. [13] These amounts represent cash contributions to all the organizations and amounts paid as dues to the American Legion and VFW.No dues were *91 claimed for Rotary Club and Mr. Lopkoff was not a member of the DAV. With the exception of dues, respondent contends that petitioners have not met their burden of proving whether any of these contributions have in fact been paid; he questions petitioners' figures as to what amounts are correctly allocable to dues; and, further, he disallows any deduction for those amounts properly characterized as dues. Having examined the record and considered *92 the testimony of petitioners, we are convinced that some of these amounts were in fact paid. In addition to those contributions itemized on their returns, petitioners claim $30 in each of the years for "fines" paid at several Rotary meetings.These fines were in actuality a means to elicit small cash contributions (usually 25" at a time) from members for scholarships and other causes for the organization. Applying the principles of Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), we allow $5 of these "fines" in each of the two years as a paid deduction. All other claimed contribution amounts remaining after the calculation in fn. 13, supra, which are in excess of those amounts allocable to dues are also allowable. Petitioners further claim that the amounts expended for dues as members of the American Legion and the VFW are valid business deductions under section 162(a). In the alternative, they assert that the dues are properly deductible under sections 212(1) or (2) because these organizations protect Mr. Lopkoff's pension income through their lobbying and related efforts before Congress.
Petitioners base their claim that section 162 allows these deductions *93 on the contention that membership in the organizations was necessary as a means of carrying out the duties of Mr. Lopkoff as a professor at the Otero Junior College. Testimony was presented that such participation in local organizations was strongly urged by the administration at the college so that Mr. Lopkoff could become well known in the community. This in turn was necessary so that professors could petition local residents and businesses for funds to support the college's different programs and thus make it possible to retain teachers such as Mr. Lopkoff. Mr. Lopkoff also ran for city council, ostensibly to increase his visibility in the community. Section 1.162-15(c), Income Tax Regs. provides that dues and other payments to an organization, such as a labor union or a trade association, are deductible in full provided that such payments otherwise meet the requirements of section 162. We think Mr. Lopkoff has not done so. Section 162(a) provides deductions for all ordinary and necessary expenses incurred in carrying on a trade or business. While *94 the dues to the American Legion and VFW may have been necessary, at least in the eyes of Mr. Lopkoff, we are not convinced that he has met his burden of proving that these are ordinary expenses. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). In Welch, the taxpayer was the secretary of a corporation which was adjudged an involuntary bankrupt. In order to protect his own business reputation in his subsequent business endeavors, the taxpayer voluntarily paid off the corporation's discharged debts. The Supreme Court declared that while the payments may be assumed to have been necessary, they did not qualify as ordinary. "Ordinary" was described not as a payment that must be habitual or normal in the sense that the same taxpayers will have to make them often. Indeed, no set rule was provided. Instead, "the standard set up by the statute is not a rule of law; it is rather a way of life. Life in all its fullness must supply the answer to the riddle." 290 U.S. at 115. However, the Supreme Court further stated that: "at such times there are norms of conduct that help to stabilize our judgment, and make it certain and objective. The *95 instance is not erractic, but brought within a known type." 290 U.S. at 114. While we do not profess to understand "life in all its fullness," at least as it pertains to a junior college professor, we do not think that it is a "known type" of action for such a professional engaged in teaching engineering to join the American Legion and VFW to further his trade or business of being a professor. Indeed, using the language of Welch, we think "it is in a high degree extraordinary." Consequently, we hold that these expenses were not ordinarily incurred in petitioner's trade or business, and thus do not qualify as deductions under section 162. Neither are we persuaded by petitioners' alternative contention that sections 212(1) or (2) allow the deductions. Section 212(1) allows deductions for expenses incurred in the production or collection of income (here, Mr. Lopkoff's service pension).Section 212(2) allows deductions for expenses incurred in the management, conservation, or maintenance of property held for the production of income. Any connection between membership in these organizations and Mr. Lopkoff's pension is tenuous at best. Mr. Lopkoff's pension rights *96 have vested and nothing remains to be done to secure receipt of his pension. We therefore fail to see how his memberships aid in the production of income. Petitioners have not met their burden of proving that they are entitled to such deductions. Welch v. Helvering,supra; Rule 142(a). Moreover, we think that Mr. Lopkoff received various benefits commensurate with the overall value of the $100 annual dues payment to each organization, and therefore a quidproquo was established. In such a situation no deduction is allowable because a taxpayer has already received the benefit of his expenditure.See and compare Horne v. Commissioner,T.C. Memo. 1957-212, where the taxpayer was not allowed a deduction for dues paid to the American Legion because he failed to prove that the payments were in reality "contributions" and were not made in return for a quidproquo. Thus, if the dues represent a contribution by petitioners, they are not deductible. We have already pointed out how they do not qualify under sections 162(a) or 212(1) or (2) as trade or business deductions or expenses incurred for the production of income. *97 To reflect the concessions of the parties and our conclusions with respect to the disputed issues, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
2. Section 280A provides, in pertinent part, as follows: SEC. 280A. DISALLOWANCE OF CERTAIN EXPENSES IN CONNECTION WITH BUSINESS USE OF HOME, RENTAL OF VACATION HOMES, ETC. (a) GENERAL RULE.--Except as otherwise provided in this section, in the case of a taxpayer who is an individual * * *, no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence. (c) EXCEPTIONS FOR CERTAIN BUSINESS OR RENTAL USE; LIMITATION ON DEDUCTIONS FOR SUCH USE.-- (1) CERTAIN BUSINESS USE.--Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis-- (a) [as] the principal place of business, for any trade or business of the taxpayer, (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or (C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business. In the case of an employee, the preceding sentence shall apply only if the exclusive use referred to in the preceding sentence is for the convenience of his employer. (5) LIMITATION ON DEDUCTIONS.--In the case of a use described in paragraph (1), (2), or (4), and in the case of a use described in paragraph (3) where the dwelling unit is used by the taxpayer during the taxable year as a residence, the deductions allowed under this chapter for the taxable year by reason of being attributed to such use shall not exceed the excess of-- (A) the gross income derived from such use for the taxable year, over (B) the deductions allocable to such use which are allowable under this chapter for the taxable year whether or not such unit (or portion thereof) was so used. [The foregoing reflects amendments enacted in 1977 (by section 306 of Pub. L. 95-30, 91 Stat. 152-153) and 1981 (by section 113(c) of Pub. L. 97-119, 95 Stat. 1642), which apply to taxable years beginning after December 31, 1975.]↩
3. In determining what Mrs. Lopkoff's principal place of business was during the years in question, we must remember that Congress enacted section 280A to provide "definitive rules relating to deductions for expenses attributable to the business use of homes." S. Conf. Rept. No. 94-1236, 94th Cong., 2d Sess., (1976), 1976-3 C.B. (Vol. 3) 807, 839. Congress felt that the "appropriate and helpful" standard for qualifying for the deduction as had been laid down by this Court in Bodzin v. Commissioner,60 T.C. 820 (1973), revd. 509 F.2d 679 (4th Cir. 1975), cert. denied 423 U.S. 825 (1975), may have resulted in treating nondeductible personal living expenses as ordinary and necessary business expenses. H. Rept. No. 94-658, 94th Cong., 1st Sess., (1976), 1976-3 C.B. (Vol. 2) 695, 852; S. Rept. No. 94-938, 94th Cong., 2d Sess., 1976-3 C.B. (Vol. 3) 49, 185. Thus, Congress wholly rejected the previous "appropriate and helpful" test promulgated in Bodzin. But see Sharon v. Commissioner,66 T.C. 515 (1976), affd. per curiam 591 F.2d 1273 (9th Cir. 1978), cert. denied 442 U.S. 941 (1979), in which we overruled Bodzin.↩
4. Petitioners determined the amounts as follows: YEAR
1977
1978
X-ray delivery contract INCOME:
$ 424.95 434.94 Less: Expenses
(196 days at 10"/mile X 56 miles)
1,097.60 (125 days at 17"/mile X 56 miles) * 1,168.75 Taxable Income (NET OPERATING LOSS)
$ (672,65)
(733.81)
* The mileage rates claimed were either the standard amount or lower than that normally allowed by respondent in the years in question for expenses associated with an auto utilized in a trade or business. The correct computation of the 1978 expenses equals $1,190 (i.e., 125 X 17" X 56). Neither party addressed this discrepancy in their briefs.↩
5. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) IN GENERAL.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- (1) a reasonable allowance for salaries or other compensation for personal services actually rendered; (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; and (3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.↩
6. Unless otherwise indicated, all references to "Rules" shall be to the Tax Court Rules of Practice and Procedure, as amended.↩
7. Section 183 provides in pertinent part: SEC. 183. ACTIVITIES NOT ENGAGED IN FOR PROFIT. (a) GENERAL RULE.--In the case of an activity engaged in by an individual or an electing small business corporation (as defined in section 1371(b)), if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section. (b) DEDUCTIONS ALLOWABLE.--In the case of an activity not engaged in for profit to which subsection (a) applies, there shall be allowed-- (1) the deductions which would be allowable under this chapter for the taxable year without regard to whether or not such activity is engaged in for profit, and (2) a deduction equal to the amount of the deductions which would be allowable under this chapter for the taxable year only if such activity were engaged in for profit, but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1). (c) ACTIVITY NOT ENGAGED IN FOR PROFIT DEFINED.--For purposes of this section, the term "activity not engaged in for profit" means any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212↩.
8. See, e.g., Carkhuff v. Commissioner,425 F.2d 1400 (6th Cir. 1970), affirming a Memorandum Opinion of this Court; Hirsch v. Commissioner,315 F.2d 731 (1963), affirming a Memorandum Opinion of this Court; Siegal v. Commissioner,78 T.C. 659, 698 (1982); Benz v. Commissioner,63 T.C. 375↩ (1974).
9. The additional four factors in the regulations are irrelevant for purposes of this case.↩
10. Indeed, even those cases that allow deduction of transportation expenses from one job to another are distinguishable from the instant case. This is because in those cases the travel involved was between two businesses. Here the x-ray business is the travel itself. See Chandler v. Commissioner,226 F.2d 467 (1st Cir. 1955), revg. 23 T.C. 653 (1955); Rev. Rul. 55-109, 1955-1 C.B. 261. However, we do find some support in these decisions. If traveling between two businesses is an allowable section 162(a) deduction, traveling within a business is most assuredly so. See and compare Steinhort v. Commissioner,335 F.2d 496↩ (5th Cir. 1964) affg. and remanding a Memorandum Opinion of this Court.
11. Additional medical trips were taken, but these were to nearby locations, and thus are not in issue in this case.↩
12. Due to Mrs. Lopkoff's heavy workday, it was inconvenient for the children to eat before the trips to Pueblo were taken or for her to prepare a "sack lunch"-type meal to be eaten enroute.↩
13. The amounts claimed for contributions to Rotary Club were $258.40 in 1977 and $251.51 in 1978. Therefore the Rotary Club contributions remaining in issue as claimed on the returns are $89.40 ($258.40 - $169) for 1977 and $69.51 ($251.51 - $182) for 1978. The remaining contested amounts are $13 in 1977 and $15 in 1978 as claimed contributions to the VFW, and $14 in 1978 paid to the American Legion. The last three dollars unaccounted for in 1978 represents a disputed contribution to the DAV. We find as fact that of the amounts claimed on the returns as contributions to the American Legion and VFW, $10 per year is properly allocable as dues to each organization. No amounts paid to the American Legion in 1977 are in dispute.↩